## CŒUR d'ALENE LUMBER CO. v. THOMPSON.

### (Circuit Court of Appeals, Ninth Circuit. May 11, 1914.)

### No. 2326.

1. NEGLIGENCE (§ 39*)—DANGEROUS PREMISES—CARE AS TO TRESPASSING CHILDREN.

The owner of premises upon which there is something dangerous and at the same time attractive to children of tender years, who knows that the place is, or because of its location is likely to be, frequented by them, owes a duty to exercise care to so safeguard it as to prevent their injury, and is liable for the death or injury of a child which the performance of such duty would have prevented.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 55; Dec. Dig. § 39.*]

2. NEGLIGENCE (§ 111*)—ACTION—SUFFICIENCY OF COMPLAINT.

In the complaint in an action to recover for the death of a child, who was drowned by falling into a well or pool on defendant's premises, which had been used in connection with a sawmill, and had been left unguarded when the mill was removed, it was not necessary to allege specifically between what dates the mill was operated, or the length of time the dangerous conditions had existed.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 182–184; Dec. Dig. § 111.*]

3. PLEADING (§ 417*)—DEMURRER—WAIVER.

Although, under a state statute, a demurrer is not waived by filing an answer at the same time, it is waived by a defendant, where on the trial, without objection on his part, the complaint is amended by eliminating the allegations on which the demurrer was based.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1401, 1402; Dec. Dig. § 417.*]

4. APPEAL AND ERROR (§ 959*)—PLEADING (§ 236*)—REVIEW—FEDERAL COURTS —DISCRETION TO ALLOW AMENDMENTS.

Under Rev. St. § 954 (U. S. Comp. St. 1901, p. 696), authorizing amendments of pleadings in the federal courts, the allowance of amendments is within the discretion of the court, and is reviewable only for an abuse of discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3825–3831; Dec. Dig. § 959;* Pleading, Cent. Dig. §§ 601, 605; Dec. Dig. § 236.*]

5. NEGLIGENCE (§ 126*) — DANGEROUS PREMISES — LIABILITY OF OWNER FOR DEATH OF CHILD.

In an action to recover for the death of a child, who fell into a well on defendant's premises and was drowned, it is immaterial that the well was made by others for use in connection with a sawmill built under a contract with defendant, where, after removal of the mill, defendant permitted it to remain without any safeguards to prevent children from falling into it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 245–247; Dec. Dig. § 126.*]

6. NEGLIGENCE (§ 136*)—DANGEROUS PREMISES—ACTION FOR DEATH OF CHILD —QUESTIONS FOR JURY.

Defendant, which owned timber land adjoining a town in which plaintiff resided, contracted with a partnership to build a sawmill on the premises and saw the timber. To procure water for the mill, the contractors dug a well five feet deep over a spring, the overflow from which passed

away through a channel. This channel became obstructed by sawdust, forming a pool several feet across and a few inches deep, covering the well, which, by reason of the discoloration of the water, could not be seen. On completion of the contract and removal of the mill, the well was left in that condition, and plaintiff's son, a child seven years old, who, with other boys, was playing in the sawdust and wading in the pool, stepped into the well and was drowned. Plaintiff testified that he had no knowledge of the existence of the well, but there was evidence to the contrary. *Held*, that the questions of defendant's negligence and plaintiff's contributory negligence were properly submitted to the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action at law by O. J. Thompson against the Cœur d'Alene Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

O. J. Thompson, the plaintiff in the court below, is a citizen of the state of Idaho. The Cœur d'Alene Lumber Company, the defendant in the court below, is a corporation organized and existing under and by virtue of the laws of the state of Washington. In the complaint of the plaintiff, as originally filed, it was alleged that for some time prior to the 1st day of June, 1911, the defendant had owned, operated, and maintained a sawmilling and woodworking plant, located upon its lands in the city of St. Maries, in the state of Idaho; that as part of the plant the defendant had caused to be excavated a certain cistern or well, which was used by it for the storage of water in connection with its milling plant; that some months prior to the 1st day of June, 1911, the defendant caused all of its buildings, machinery, and appliances to be moved from its lands in the city of St. Maries, but carelessly and negligently failed to fill up or cover the cistern or well excavated by it, and carelessly and negligently permitted the cistern or well to remain open up to and including the 1st day of June, 1911; that on that date the cistern or well had become filled with water to a depth of about 10 feet, and had become extremely dangerous to children of tender years and to others who had occasion to go upon the premises, either for business or for pleasure, and the lands maintained as aforesaid by the defendant had become and were dangerous premises; that for many months prior to the 1st day of June, 1911, the minor son of the plaintiff, Bernarr Thompson, with numerous other children living in the city of St. Maries, had frequently and habitually gone upon, over, and across the lands and premises of the defendant to the vicinity of the cistern or well for the purpose of play and amusement, all of which was known by the defendant, or could have been known by it in the exercise of reasonable care, and ought to have been and was anticipated by it and its agents and servants; that the dangerous condition of the premises of the defendant, and the danger of small children falling into its cistern or well and becoming drowned, and the habitual use of the premises by Bernarr Thompson and other companions and children of tender years, was open and notorious up to the time of the death of said Bernarr Thompson, and was well known to the defendant; that on account of the tender years of Bernarr Thompson he did not know or appreciate the dangerous condition of the premises of the defendant; that on the 1st day of June, 1911, Bernarr Thompson, in company with other children, were playing in, about, and upon the premises of the defendant, and close to and in the immediate vicinity of the cistern or well excavated by it, which at that time was filled with water up to and on a level with the ground; that said Bernarr Thompson, while so playing therein and thereabout, accidentally and inadvertently fell into the cistern or well and was drowned; that the negligence and carelessness on the part of the defendant in failing and neglecting to fill up or cover the cistern

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

or well which had been excavated by it was the proximate and sole cause of the death of Bernarr Thompson.

The defendant demurred to the complaint, on the grounds that it did not state facts sufficient to constitute a cause of action against the defendant; that it was uncertain, unintelligible, and ambiguous, in that it was not alleged therein, and did not appear therefrom, how long prior to the 1st day of June, 1911, the defendant had owned, operated, and maintained the sawmilling and woodworking plant mentioned in the complaint; that it did not appear in the complaint how long prior to the 1st day of June, 1911, the defendant had caused all of the buildings, machinery, and appliances mentioned in the complaint to be removed from its lands; and that it did not appear from the complaint in what manner the defendant had recklessly, negligently, and carelessly maintained the well and cistern mentioned in the complaint. The demurrer was overruled by the court below.

In the answer filed by the defendant all of the allegations of the complaint were denied, and as matter of affirmative defense the defendant alleged that at all of the times mentioned in the complaint it had been the owner of the N. E. ¼ of the N. E. ¼ of section 27, township 45 N., range 2 W., Boise meridian, in Kootenai county, in the state of Idaho; that on the 14th day of September, 1907, the defendant entered into a written contract with a certain copartnership doing business under the firm name of Schmidt Bros., to manufacture into timber and lumber for the defendant all of the logs then being on the lands above described and owned by the defendant; that thereupon Schmidt Bros. erected a sawmill on the lands of the defendant, and engaged in manufacturing lumber for the defendant, pursuant to the terms of the contract, up to and including the month of October, 1908; that in the operation of the sawmill by Schmidt Bros., and without the knowledge of the defendant, sawdust accumulated in piles adjacent to the sawmill; that back of the sawmill there was a small ravine, which sloped from a hillside toward the millsite of Schmidt Bros.; that water flowed through the ravine and terminated at the piles of sawdust into a small pool or sink, forming a pond about 25 or 30 feet long and about 12 or 15 feet wide; that the pool or pond was off and out of the way of any public highway; that at all times mentioned in the answer the pool or pond remained open, uninclosed, and uncovered, and that it was caused by Schmidt Bros. leaving upon their millsite piles of sawdust, against which the waters in the ravine flowed, stood, and remained; that, if any well was dug by Schmidt Bros. upon the premises, the defendant had no knowledge thereof. The defendant further alleged in its answer that the plaintiff knew of the existence of the pool or pond of water, and knew that his minor son was in the habit of going upon the premises, and that the carelessness and negligence of the plaintiff in failing to exercise due care, control, and supervision over his minor son, and in omitting to restrain and prevent him from entering upon the premises of the defendant, were the proximate causes of the death of his son.

At the close of the plaintiff's testimony the defendant moved the court for a judgment of nonsuit in its favor and against the plaintiff. The motion was based upon the grounds that the evidence was insufficient to warrant or justify a verdict in favor of the plaintiff and against the defendant, that the testimony in the case failed to prove that the minor son of the plaintiff was drowned by reason of any negligence or carelessness on the part of the defendant, and that the testimony showed that the plaintiff was guilty of contributory negligence in permitting his minor son to play in and about the sawdust piles, and the well or pool of water, on the defendant's land. The motion for a nonsuit was denied.

At the close of the testimony the defendant renewed its motion for a nonsuit, together with a motion for a directed verdict in its favor, on the grounds theretofore urged by it in support of its motion for a nonsuit made at the close of the plaintiff's testimony, and in addition thereto on the further grounds that the testimony showed that the well or cistern was not dug by the defendant, but was dug by Schmidt Bros., as independent contractors, that at the time the well or cistern was dug the contractors were operating a sawmill of their own upon the premises described in the complaint, and that

the defendant had no interest in the ownership of the plant and did not participate in the operation thereof. The motions for a nonsuit and for a directed verdict were denied.

The jury returned a verdict in favor of the plaintiff for the sum of $2,500. From the judgment entered thereon the defendant sued out a writ of error from this court.

McFarland & McFarland, of Cœur d'Alene, Idaho, and Charles L. Heitman, of Spirit Lake, Idaho, for plaintiff in error.

W. H. Plummer and Joseph J. Lavin, both of Spokane, Wash., and Whitla & Nelson, of Cœur d'Alene, Idaho, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. The defendant has assigned as error the order of the trial judge overruling the demurrer interposed by it to the complaint of the plaintiff. By section 4228 of the Code of Civil Procedure of the state of Idaho, it is provided that "a demurrer is not waived by filing an answer at the same time." It is contended that under this statute the filing of an answer in the United States court did not waive the objection to the complaint raised by the demurrer. The objection was that the complaint did not state facts sufficient to constitute a cause of action: First, because it was alleged in the complaint that the dangerous condition of the premises of the defendant, and the danger of small children falling into the well or cistern and being drowned, and the habitual use of the premises by the minor son of the plaintiff, and other children of tender years, was open and notorious up to the time of the death of the plaintiff's son; second, because the complaint was uncertain, unintelligible, and ambiguous, in that it was not therein alleged how long prior to the 1st day of June, 1911, the defendant had owned, operated, and maintained the sawmilling and woodworking plant mentioned in the complaint, and, further, that it did not appear from the complaint how long prior to the 1st day of June, 1911, the defendant had caused all of the buildings, machinery, and appliances mentioned in the complaint to be removed from its premises.

The allegations of the complaint were, in our opinion, sufficient to state a cause of action against the defendant. In Shearman & Redfield on the Law of Negligence, § 705, the broad rule applicable to cases of this character is stated as follows:

"The owner of land, where children are allowed or accustomed to play, particularly if it be unfenced, must use ordinary care to keep it in a safe condition, for they, being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers, and mere licensees."

In Thompson's Commentaries on the Law of Negligence, § 1030, the rule is stated as follows:

"We now come to a class of decisions which hold the landowner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises, where they are accustomed to come with or without license. These decisions proceed on one or the other of two grounds: (1) That where the owner or occupier of grounds *brings* or *artificially creates*

something thereon which from its nature is especially *attractive to children*, and which at the same time is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. (2) That although the 'dangerous thing may not be what is termed an *attractive nuisance*—that is to say, may not have an especial attraction for children by reason of their childish instincts—yet where it is so *left exposed* that they are liable to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them. In respect of the first class of cases, that of *attractive nuisances*, it is to be observed that it would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed, and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong, might thereby be killed or maimed for life."

In Railroad Company v. Stout, 84 U. S. (17 Wall.) 657, 21 L. Ed. 745, commonly called the "Turntable Case," and being one of the first cases in the United States Supreme Court in which the doctrine of attractive nuisances was announced, Mr. Justice Hunt said:

"It is well settled that the conduct of an infant of tender years is not to be judged by the same rule which governs that of an adult. While it is the general rule in regard to an adult that to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must himself have been free from fault, such is not the rule in regard to an infant of tender years. The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case."

In the case of City of Pekin v. McMahon, 154 Ill. 141, 39 N. E. 484, 27 L. R. A. 206, 45 Am. St. Rep. 114, the defendant maintained upon its lands, which was separated from the adjoining streets by fences with large gaps in them, a pit of deep water on which were floating planks. The owner was aware that the place was attractive to children of tender years. The Supreme Court of Illinois, in holding that the failure of the owner to use reasonable care to drain such pit, or to keep children out of it, constituted negligence as against children of tender years, even though they were technically trespassers, said:

"The general rule is well settled that the private owner or occupant of land is under no obligations to strangers to place guards around excavations upon his land. The law does not require him to keep his premises in safe condition for the benefit of trespassers, or those who come upon them without invitation, either express or implied, and merely to seek their own pleasure and gratify their own curiosity. * * * An exception, however, to this general rule exists in favor of children. Although a child of tender years, who meets with an injury upon the premises of a private owner, may be a technical trespasser, yet the owner may be liable, if the things causing the injury have been left exposed and unguarded, and are of such a character as to be an attraction to the child, appealing to his childish curiosity and instincts. Unguarded premises, which are thus supplied with dangerous attractions, are regarded as holding out implied invitations to such children. * * * Where the land of a private owner is in a thickly settled city, adjacent to a public

street or alley, and he has upon it, or suffers to be upon it, dangerous machinery, or a dangerous pit or pond of water, or any other dangerous agency, at a point thereon near such public street or alley, of such a character as to be attractive to children of tender years, incapable of exercising ordinary care and he is aware or has notice of its attractions for children of that class, we think that he is under obligations to use reasonable care to protect them from injury when coming upon said premises, even though they may be technical trespassers. To charge him with such an obligation under such circumstances is merely to apply the well-known maxim, 'Sic utere tuo ut alienum non lædas.' It is true, as a general rule, that a party guilty of negligence is not liable if he does not owe the duty which he has neglected to the person claiming damages. Williams v. Railroad Co., 135 Ill. 491, 26 N. E. 661 [11 L. R. A. 352, 25 Am. St. Rep. 397]. But, although the private owner may owe no duty to an adult under the facts stated, the cases known as the 'Turntable Cases' hold that such duty is due from him to a child of tender years."

In Bjork v. City of Tacoma, 135 Pac. 1005 (1913), the Supreme Court of Washington, in holding that the doctrine laid down in the "Turntable Cases" was entirely applicable to the case under consideration by it, the facts of which were very similar to the case which we are now considering, said:

"The turntable and machinery cases, however, are in no just sense sui generis. They rest, as it seems to us, upon the one broad principle common to all cases of injury from dangerous premises and all cases of so-called 'attractive nuisances'—that there is always a duty due to society upon the owner of premises to take reasonable care to so use his own as not to injure another, a failure to observe which is negligence. 1 Thompson, Negligence (2d Ed.) §§ 1033 and 1036; Hydraulic Works v. Orr, 83 Pa. 332; Bransom's Adm'r v. Labrot, 81 Ky. 638, 50 Am. Rep. 193; Union Pac. Ry. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434; Biggs v. Consolidated Barb-Wire Co., 60 Kan. 217, 56 Pac. 4, 44 L. R. A. 655."

In Tucker v. Draper, 62 Neb. 66, 86 N. W. 917, 54 L. R. A. 321, the Supreme Court of Nebraska said:

"If I know that there is an open well upon my premises, and know that children of such tender years as to have no notion of their danger are continually playing around it, and I can obviate the danger with very little trouble to myself, and without injuring the premises, or interfering with my own free use thereof, I owe an active duty to those children; and if I neglect that duty, and they fall into the well, and are killed, it is through my negligence. I cannot urge their negligence as a defense, even though I have never invited or encouraged them expressly or impliedly to go upon the premises."

We are aware that in many cases the rule laid down in the cases from which we have cited has not been adhered to. There are numerous authorities of high repute in support of the rule that if a child trespasses upon the premises of another, and is injured in consequence of something that befalls him while so trespassing, he cannot recover damages, unless the injury was wantonly inflicted. Among these is the late case of City of Shawnee v. Cheek, 137 Pac. 724, to which our attention has been directed by a supplemental brief filed by the defendant. The cases in support of the two rules are hopelessly in conflict. We have only to say that we prefer to follow the more humane rule, rather than the rule that an owner of land cannot be held responsible for injuries to children unless the same were wantonly inflicted. The latter rule is—

"a cruel and wicked doctrine, unworthy of a civilized jurisprudence, which puts property above humanity, leaves entirely out of view the tender years and infirmity of understanding of the child, indeed his inability to be a trespasser in sound legal theory, and visits upon him the consequences of his trespass just as though he were an adult, and exonerates the person or corporation upon whose property he is a trespasser from any measure of duty towards· him which they would not owe under the same circumstances towards an adult." Thompson's Commentaries on the Law of Negligence, § 1026.

[2] 2. With respect to the other objections—that the complaint was uncertain, unintelligible, and ambiguous—it need only be said that it was not incumbent upon the plaintiff to allege specifically between what dates the mill had been operated upon the premises. The negligence of ·the defendant consisted in allowing the pool or well to remain on its premises unguarded and uncovered after the mill had ceased to be operated, and on the date that the minor son of the plaintiff was drowned·therein, and the exact length of time during which ·these conditions had existed was immaterial.

[3] 3. It is contended that the demurrer should have been sustained, for the reason that the complaint alleged that the dangerous and unsafe condition of the premises "was open and notorious up to the time of the death of said Bernarr Thompson, and was well known to said defendant"; that is to say, that, being "open and notorious," it was known to the plaintiff, and, being known to the plaintiff, it was negligence on his part to allow the child to wander to such a place.

Conceding that under the Idaho statute the demurrer was not waived by the filing of the answer, it was nevertheless competent for the defendant to waive the objection to the complaint upon the trial of the case, and this the defendant actually did. The plaintiff was permitted to testify without objection that he lived about 6½ blocks from the place where the child was drowned, and that he had never been at the place prior to the accident, and, being asked, "Had you ever known your boy to go up there and play?" the plaintiff answered "No." The objection was then made that it was alleged in the complaint that the dangerous condition of the premises and the danger of small children falling in the well or cistern and becoming drowned, and the habitual use of the premises by said Bernarr Thompson and other companions and children of tender years, was open and notorious up to the time of the death of said Bernarr Thompson, and was well known to the defendant. This allegation of the complaint, after discussion, was amended by leave of the court; the amendment consisting in striking out the words "was open and notorious up to the time of the death of said Bernarr Thompson." To this amendment the defendant's counsel objected. The court allowed the amendment, but upon the following conditions:

"The Court: I think I shall do this: I shall permit you to do this, upon these conditions: You may strike out entirely the words in the eighth paragraph, 'was open and notorious up to the time of the death of said Bernarr Thompson and,' upon the condition that if the verdict should be in favor of the plaintiff, and the defendant shall thereupon make a showing that they produced proof contrary to the implication of this language, that a new trial will be granted, and that, in case a new trial is granted, that you pay the· costs of this trial."

The plaintiff's counsel accepted the conditions. The defendant's counsel appears to have interposed an exception, but when the court asked the parties, "Do you accept those conditions?" the plaintiff's counsel announced his acceptance, and the defendant's counsel remained silent. The taking of testimony proceeded. We think this silence (if there was a silence) was, under the circumstances, an acceptance of the conditions. If it was the purpose of defendant's counsel to object, he should have said so, and placed his objection clearly and distinctly on the record. Failing to do that, he was bound by the conditions under which the complaint was amended, and, being so amended, there was an actual waiver of the demurrer.

[4] But, aside, from any implied assent on the part of the defendant to this and other amendments made to the complaint to conform to the evidence, we think the amendments were properly allowed by the court under the statute of the United States providing for such amendments. Section 954 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 696) provides as follows:

"* * * Any court of the United States * * * may at any time permit either of the parties to amend any defect in the process or pleadings upon such conditions as it shall, in its discretion and by its rules, prescribe."

In Bamberger v. Terry, 103 U. S. 40, 26 L. Ed. 317, the plaintiff, at the close of the testimony, had asked for, and against the objection of the defendant had obtained, leave to amend his declaration so as to avoid a variance between the pleadings and the proof. Mr. Chief Justice Waite, delivering the opinion of the Supreme Court of the United States, and referring to section 954 of the Revised Statutes, said:

"By section 954, Revised Statutes, the trial court may at any time permit either of the parties to amend any defect in the process or pleadings upon such conditions as it shall in its discretion, or by its rules, prescribe. This clearly authorizes the allowance of amendments during the process of a trial in furtherance of justice."

In Mexican Central Railway v. Pinkney, 149 U. S. 194, 201, 13 Sup. Ct. 859, 862 (37 L. Ed. 699), Mr. Justice Jackson said:

"It is well settled that mere matters of procedure, such as the granting or refusing of motions for new trials, and questions respecting amendments to the pleadings, are purely discretionary matters for the consideration of the trial court, and, unless there has been gross abuse of that discretion, they are not reviewable in this court on writ of error."

In McDonald v. State of Nebraska, 101 Fed. 171, 176, 41 C. C. A. 278, 283, Caldwell, Circuit Judge, said:

"The right and duty of the federal courts to allow amendments does not rest on state statutes only. It is conferred on them by the Judiciary Act of 1789. That act was framed by the great statesmen and lawyers who had actively participated in the struggle to establish the political independence of their country. When this object had been achieved, and the Constitution adopted, they framed an act for the organization and government of the national courts, which has remained for more than a century a monument to their great wisdom, foresight, and sense of justice. The thirty-second section of that act (now section 954 of the Revised Statutes) was designed to free the administration of justice in the federal courts from all subtle, artificial, and technical rules and modes of proceeding in any way calculated

to hinder and delay the determination of causes in those courts upon their very merits. This act 'emancipated the judicial department of the government from the shackles of artificial and technical rules, which had theretofore been interposed to obstruct the administration of justice, as completely as the Revolution had emancipated the political department of the government from foreign domination. This was done by investing the federal courts with plenary power to remove by amendment all such impediments to the attainment of justice."

See, also, Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800; Gormley v. Bunyan, 138 U. S. 632, 11 Sup. Ct. 453, 34 L. Ed. 1086.

In the present case the record shows that the amendments were permitted by the trial judge in the exercise of his sound discretion, and we will not interfere with his ruling in that regard.

[5] 4. It appears from the testimony that on the 14th day of September, 1907, the defendant entered into a written agreement with a copartnership doing business under the firm name of Schmidt Bros., wherein and whereby the latter agreed to saw and manufacture into timber and merchantable lumber logs to be furnished to them by the defendant herein, and to be cut from fractional section 27, township 46 N., range 2 W. of Boise meridian, for a stipulated price particularly set forth in the agreement. Schmidt Bros. were to begin the work of manufacturing the timber for the defendant by the 15th day of October, 1907, if it was possible for them to have their mill set up by that time. It was further agreed between the parties that the timber was to be sawed at all times under the direction of the defendant herein, its agent or manager.

It further appeared from the testimony that pursuant to this agreement the mill was built by Schmidt Bros., and operations therein were begun about November 1, 1907; that Schmidt Bros. continued to operate the mill in the performance of their contract with the defendant for about a year, completing their contract at that time, although the mill was not removed from the premises of the defendant until the year 1910. It further appeared from the testimony that, for the purpose of obtaining water for the operation of their mill, Schmidt Bros. dug a well at a point on the defendant's land near the mill where there was a small spring in a ravine or gulch. The well was about 5 feet deep, and about 4 feet wide and 6 feet long. It was dug in such manner that the spring was right in the bottom thereof and constituted the source of supply of water for the well. The sides of the well were curbed with 2-inch planking which extended up to, but not above, the surface of the ground. When the mill was not being operated and water not being drawn from the well, it filled up and overflowed through a drain extending down the ravine or gulch. In the operation of the mill sawdust was deposited in piles in the vicinity of the well, and at the time of the death of the minor son of the plaintiff the drain or outlet had become clogged with sawdust, causing the waters of the well to back up and accumulate above the top of the well proper, forming a pond or pool about 8 or 10 feet wide and about 18 or 20 feet long. The pool or pond thus formed consisted of a rim of shallow water 6 or 8 inches deep, terminating abruptly in the well which it surrounded.

The testimony also tended to show that by reason of the muddy condition of the water, and the sawdust surrounding the pool and floating thereon, the well at the bottom thereof was not visible.

The defendant contends that inasmuch as the undisputed testimony showed that the well or pond in which the plaintiff's son was drowned was made by Schmidt Bros., independent contractors, and that at the time it was dug Schmidt Bros., as independent contractors, held a contract with the defendant and were operating upon the premises a sawmill of their own, and that the defendant had no interest or ownership in the plant, and did not participate in the operation thereof, it could not be held liable, and that the court erred in overruling the motions for a nonsuit, based upon these grounds, made at the close of the plaintiff's testimony and also at the close of all of the testimony in the case. But this contention of the defendant, and the reasons upon which it is based, are not applicable to this case. With the questions as to who dug the well and who permitted the sawdust to accumulate around the same causing the formation of a pond, we are not concerned. We have, only to consider in this case the condition of the premises of the defendant at the time of the death of the minor son of the plaintiff. The negligence of the defendant consisted in permitting the pool and well to remain upon its premises, uncovered, unguarded, and in a condition dangerous to the safety of children of tender years who might go to the vicinity thereof to play, after the termination of the contract with Schmidt Bros. for the cutting of its timber, and after the removal of the latter's mill. The defendant was in sole possession of the premises at the time the son of the plaintiff was drowned, and it alone was accountable for and chargeable with any negligence in the use, operation, or condition thereof.

[6] 5. The record discloses abundant testimony to support the verdict rendered by the jury in favor of the plaintiff and against the defendant. Bernarr Thompson, the son of the plaintiff, was seven years of age and lived with his mother and father at St. Maries, Idaho. It appeared from the testimony of Kenneth Warner, a lad of nine years and a companion of Bernarr Thompson, that on the morning of the day on which the latter was drowned the witness, together with Bernarr Thompson and another lad named Russell Moore, went out into the hills surrounding the town of St. Maries to play; that after playing in the hills for a period they went over to the sawdust pile on the defendant's land to continue their games; that they ate their lunches on the sawdust pile, and afterwards took off their shoes and stockings and went in wading in the pool of water in the center of the sawdust pile; that the water in which they waded was about five or six inches deep; that there was nothing to indicate that there was a deep hole or well in the center and at the bottom of the pool; that after wading around in the shallow water for a while, Bernarr Thompson and Russell Moore took off the rest of their clothes and again went into the water to swim; that Bernarr Thompson could not swim, and immediately sank down into the well at the bottom of the pool; that while trying to rescue Bernarr Thompson from the deep water of the well, and pull him back to the shallow water surrounding it, Russell Moore

215 F.—2

was himself pulled into the well, and then and there both of the lads drowned.

There was some testimony tending to show that the plaintiff in this case had been upon the premises of the defendant and was familiar with the dangerous condition thereof. But the plaintiff denied that he had ever been upon the defendant's land, and denied that he had ever been informed, either directly or indirectly, of the condition of the premises with respect to the well or any other dangerous instrumentalities.

The questions of the negligence of the defendant, and contributory negligence on the part of the plaintiff presented by the conflict in the testimony, were submitted to the jury, and the defendant does not assign, nor do we find, any objection to the instructions given on either of these questions.

The judgment of the lower court is affirmed.