## CRANE CO. v. BUSDIEKER.*

(Circuit Court of Appeals, Eighth Circuit. January 27, 1919.)

No. 5120.

1. APPEAL AND ERROR ⬅927(7)—REVIEW—REFUSAL OF DIRECTED VERDICT.

Where defendant complains of refusal of trial court to direct verdict in its favor, *held*, that every material issue upon which there was substantial conflict in the evidence must be treated as decided in favor of plaintiff by the verdict of the jury.

2. NEGLIGENCE ⬅59—PROXIMATE CAUSE.

An injury that could not have been foreseen or reasonably anticipated by a person of ordinary prudence as the probable result of an act of alleged negligence is not actionable, nor is an injury or death that is not the actual or probable consequence of the act, and that would not have resulted from it, but for the interposition of some new and independent cause that could not have been anticipated.

3. DEATH ⬅17—ACTIONS—NEGLIGENCE—PROXIMATE CAUSE.

Where plaintiff's husband, who volunteered to guide the tongue of a wagon which another teamster was trying to draw off of an apron of a wharf boat, was, when the wagon was suddenly and unexpectedly moved, thrown under the team and wagon of defendant, whose driver, knowing the ineffectual attempts to move the wagon, which was fast, proceeded to drive onto the apron, *held*, that the act of defendant's driver was not the proximate cause of the accident, for it could not have been anticipated.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Frances J. Busdieker against the Crane Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions to grant new trial.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied April 2, 1919.

Percy. Werner, of St. Louis, Mo. (George M. Block and Frank B. Coleman, both of St. Louis, Mo., on the brief), for plaintiff in error.

Arthur E. Kammerer, of St. Louis, Mo. (Leo Rassieur and Leo Rassieur, Jr., both of St. Louis, Mo., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER, District Judge.

SANBORN, Circuit Judge. The Crane Company, a corporation, complains that at the trial of an action, brought by Mrs. Frances J. Busdieker for damages for its negligence, which she asserted caused the death of her husband, the court below, at the close of the evidence, refused to instruct the jury to return a verdict in its favor, on the ground that there was no substantial evidence of its causal negligence, and the jury returned a verdict against it for $7,500.

[1] In considering this complaint, every material issue upon which there is a substantial conflict in the evidence must be and has been treated as decided in favor of Mrs. Busdieker by the verdict of the jury. On that basis the facts which conditioned the decision of the complaint of the Crane Company are these: Edward Brown, an employé of that company, was the driver of a team drawing a loaded wagon toward a boat which lay in the river by the side of the levee at St. Louis, upon which he was to unload the wagon. The negligence alleged is the negligence of this driver. In order to get his wagon onto the boat, where it was to be unloaded, it was necessary for him to drive from the levee upon and across an apron and a bridge onto the wharfboat. The levee lay on the west side of the river, sloping downward easterly to and beneath the water of the river. The west side of the apron lay on the levee while its east side was attached to the west side of the bridge several feet above the water, and the bridge extended easterly to the wharfboat, so that over the apron and the bridge loaded wagons could be drawn from the levee onto the wharfboat. Brown drove his team from the south to a point on the levee whence he could conveniently drive down upon the apron, and thence across the bridge to the wharfboat and there on the levee he stopped. Before he arrived there, the driver of a team attached to a loaded fruit wagon, in undertaking to drive onto the apron, had driven the north wheels of his wagon down the levee along the north end of the apron and the south wheels thereof onto the apron, and there the wagon stuck fast and became immovable. The driver unhitched his mules and drove them up onto the levee, leaving the forward end of the tongue of his wagon with chains attached to it pointing southeasterly and resting on the apron. Some time after this Mr. Mohrman, driving a team drawing a wagon, came off the wharfboat, and, seeing the condition of the fruit wagon, he backed up to it, after he had passed it, attached the rear axle of his wagon to the rear axle of the fruit wagon with a strong rope, and attempted, by driving up his team, to draw the fruit wagon up the levee. When Brown drove up from the south with his load, Mohrman was trying in vain to move the fruit wagon. Brown waited and watched his attempts for some time, but the fruit wagon

remained immovable. Mohrman had then been trying to pull it from its place for from 5 to 15 minutes. There was room enough on the south side of the fruit wagon for Brown's wagon to pass it and go onto the wharfboat, and the time for the boat upon which his load was to go was approaching. Mohrman drove his team to the southwest, but the fruit wagon held fast. Brown then asked Mohrman to turn his team northerly and hold them there, and told him that he thought he could drive by the fruit wagon. Mohrman replied that he did not think that Brown could do so, and that he would not pull down there. At about this time Mr. Busdieker had voluntarily gone onto the apron and taken hold of the chains attached to the tongue of the fruit wagon, to steer it in case Mohrman should succeed in moving it. Pursuant to Brown's request, Mohrman turned his team northerly. Brown drove his team down the levee onto the apron. Just as they were going onto the apron, Mohrman, as he testified, "gave another jerk, not expecting to get it loose, and jerked the wagon loose." When he thus moved the wagon, its tongue swung forcibly south and threw Busdieker under the horses and wagon of Brown as he came up the apron, and they ran over and killed him.

[2, 3] An injury or death that is the natural and probable consequence of an act of alleged negligence is actionable. But an injury that could not have been foreseen or reasonably anticipated, by a person of ordinary prudence and intelligence, as the probable result of an act of alleged negligence, is not actionable; nor is an injury or death that is not the natural or probable consequence of the act of alleged negligence, and that would not have resulted from it, but for the interposition of some new and independent cause that could not have been anticipated. Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Elliott, 55 Fed. 949, 952, 954, 5 C. C. A. 347, 20 L. R. A. 582; Railway Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Hoag v. Railroad Co., 85 Pa. 298, 299, 27 Am. Rep. 653; Cole v. German Savings & Loan Society, 124 Fed. 113, 115, 117, 59 C. C. A. 593, 63 L. R. A. 416; Western Union Telegraph Co. v. Schriver, 141 Fed. 538, 72 C. C. A. 596, 4 L. R. A. (N. S.) 678; American Bridge Co. v. Seeds, 144 Fed. 605, 610, 75 C. C. A. 407, 11 L. R. A. (N. S.) 1041. When Brown drove his team down the levee onto the apron, Mohrman had been trying to pull the fruit wagon from its place for from 5 to 15 minutes, but had failed to move it. Apparently it was stuck so fast that he could not and would not move it by the use of his team. Its subsequent motion was not caused by Brown's act of driving his team upon the platform, and that motion, the swing of the tongue, and the death of Busdieker were not the natural or probable consequence of Brown's driving on the platform, nor would a man of reasonable prudence and intelligence in his situation, knowing the failure of the repeated futile attempts of Mohrman to move the fruit wagon, that Mohrman knew that Brown was about to drive down upon the apron, that Mohrman had turned his horses northerly at Brown's request, to let the latter drive down past the fruit wagon, have anticipated that Mohrman would drive up his horses, jerk the fruit wagon loose, and cause the tongue to throw Busdieker down on the

apron while Brown was driving his horses across it. Nor was Brown's driving his wagon upon the platform the proximate cause of Busdieker's injury and death. Neither could nor would have resulted therefrom, had not the new independent cause, the sudden and inopportune jerk of the fruit wagon by Mohrman, have caused the violent swing of its tongue at the instant when Brown was driving onto the apron, an act which could not have been foreseen or anticipated by Brown, have interrupted the natural sequence of events, turned it aside from their natural course, and produced the lamentable results. There was no substantial evidence here of causal negligence of the Crane Company or of Brown its driver.

The judgment below must therefore be reversed, and the cause must be remanded to the court below, with instructions to grant a new trial; and it is so ordered.