## CONSOLIDATED LEAD & ZINC CO. v. CORCORAN.

Circuit Court of Appeals, Tenth Circuit. January 6, 1930.

Rehearing Denied February 17, 1930.

No. 8.

Stewart Lynch, of Tulsa, Okl. (A. C. Wallace, of Miami, Okl., and Herbert D. Mason, of Tulsa, Okl., on the brief), for appellant.

Frank Nesbitt, of Miami, Okl., for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge. The Consolidated Lead & Zinc Company appeals from an adverse judgment rendered upon the verdict of a jury in a suit of Karl Corcoran, a minor, brought by a next friend, to recover damages for personal injuries sustained by him on the premises of the company. The errors assigned are mainly (1) overruling a demurrer to the petition for failure to allege a cause of action, (2) refusal to direct a verdict for the company, and (3) instructions given and refused. We find it necessary to reverse the judgment, because of an instruction relative to damages, but as the other questions now presented will likely arise at another trial, we proceed also to determine them.

A preliminary averment of the petition is that the company owned at Picher, Okl., a city of 15,000 inhabitants, a mill, transformer house, and other equipment, known as the "Piokee Mine," located one block north of the high school building, passed by a public road long traveled by many inhabitants and used daily by school children. The transformer house, it is alleged, 15 by 20 feet in dimensions, located near and in plain view from the road, was maintained by the company with electrical equipment for the operation of the mine, and for several months before the accident, without fence or guard, with the front and a small side door open, the equipment consisting of rheostats, transformers, and switch connections, attractive and easily accessible to children, exciting their curiosity and interest, without notice it carried a dangerous charge of electricity.

It is alleged that for several months before the accident it had been the custom of the plaintiff and other boys who attended the school and lived in the neighborhood to play around the transformer house and mine, haul refuse from around the house, and to use it and the premises around the mine as a playground, as the company well knew, or could easily have known, and further, on the day of accident there was no day watchman at the mine, and the company had recently cut the wiring in the transformer house, leaving one cord loose and unwrapped on the floor, but connected with the electrical power.

It is then alleged that on February 22, 1927, while these conditions were known to and permitted by the company, the plaintiff and another boy were playing in the transformer house, the latter pushed a switch, connecting the power with the wire on the floor, and shortly they engaged in a friendly scuffle in which plaintiff fell to the floor with his hands on the exposed wire, whereby the electric current burned his arms, necessitating amputation of both, with the attendant pain and suffering, permanently depriving him of earning capacity and rendering him an object of pity; that the injury was due to the negligence of the company in failing to fence, guard, protect, or lock the transformer house, or close it for several months, and to have a watchman there to notify children of the danger, well knowing it contained machinery interesting and alluring to children and highly dangerous, and they had customarily played around the house and equipment; and that the injury would not have occurred but for defendant's negligence.

An objection to the petition is it shows the plaintiff was a trespasser on the company's property, whereby the company could be liable only for a willful or wanton injury, not complained of in the petition. Many cases are cited to so fix plaintiff's status, particularly United Zinc Company v. Britt, 258 U. S. 268, 42 S. Ct. 299, 300, 66 L. Ed. 615, 36 A. L. R. 28, where the allurement was a poisonous pool of water, without evidence that it attracted the children to the premises. That case distinguished Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745, where an unlocked turntable in an open space and near two roads was the attraction, and the company had reason to anticipate children would resort to it, and Union Pacific Railway v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434, where a frightened boy ran and fell into burning slack, on an open lot near a path. Both of those cases are more nearly applicable here. The Britt Case was essentially different in the facts, which were held not to impose the duty of care. The court said: "There can be no general duty on the part of a landowner to keep his land safe for children, or even free from hidden dangers," but was careful to add, "if he has not directly or by implication invited or licensed them to come there." The case is obviously not in point. The "attractive nuisance" doctrine is also said to be inapplicable, and cases are cited as a demonstration. Of these, Hardy v. Missouri Pacific (C. C. A.) 266 F. 860, 36 A. L. R. 1, is typical. It was held there must be a reasonable expecta-

298

tion of the presence of children at the time and place of danger to impose the duty of protection, and there was no sufficient evidence on which to found it.

But it is alleged in this case that habitual use as a playground had been made of the premises and transformer house, as the company knew or might easily have known, and in that situation the plaintiff was a licensee, and being there as such, with the acquiescence of the company, it owed him the duty of protection against danger in the transformer house known to the company, to which he might be attracted and to which it might reasonably anticipate he would resort and be injured. Escanaba Mfg. Co. v. O'Donnell (C. C. A.) 212 F. 648; The Ansonia v. Sullivan (C. C. A.) 239 F. 296; Atlanta & W. P. R. Co. v. Green (C. C. A.) 246 F. 676; Felton v. Aubrey (C. C. A.) 74 F. 350; Clark v. Longview Public Service Co., 143 Wash. 319, 255 P. 380; Sweeten v. Pacific P. & L. Co., 88 Wash. 679, 153 P. 1054; Smith v. Windsor Reservoir & Canal Co., 78 Colo. 169, 240 P. 332; Cahill v. Stone & Co., 153 Cal. 571, 96 P. 84, 19 L. R. A. (N. S.) 1094; 45 C. J. 802, 803, 806, 807.

The plaintiff's case as made by the petition rests on his position as a licensee at the grounds and transformer house, and we are of the opinion a cause of action was sufficiently alleged. The petition is challenged as not alleging directly he was attracted to the machinery in the power house. We regard the pleading as so intended, but the defect is subject to remedy by amendment, which doubtless should be made.

It is urged the petition does not show the negligence of the company was the proximate cause of the injury, since it left the wires in a safe condition, and they were rendered unsafe by the intervening act of plaintiff's companion in throwing the switch and making the connection with the wire that wrought the injury, and, furthermore, that the evidence (which we may notice at this point) is likewise deficient in showing that his companion pushed him upon the wire. Assuming these facts, the contention is unsound. The injury was attributed in the petition directly to defendant's negligence. It was a question of fact whether the injury was the natural and probable consequence of such negligence, and could have been foreseen and anticipated by the defendant, as a reasonably prudent company. Johns-Manville v. Pocker (C. C. A.) 26 F.(2d) 204. The acts of plaintiff's companion were not essentially different from the operation by another

of the turntable in the Stout Case, 17 Wall. 657, 21 L. Ed. 745. Leaving the machinery at a playground so unguarded in the open house that children might reasonably be expected to operate it was the primary negligence charged, for which a recovery was authorized. Edgington v. Burlington, C. R. & N. R. Co., 116 Iowa, 410, 90 N. W. 95, 57 L. R. A. 561; Herman v. Markham Air Rifle Co. (D. C.) 258 F. 475; Milwaukee R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; 45 Cyc. 931, 932. As accentuating the responsible cause of the injury, it was alleged that the company had shortly changed the wires and left them in a condition dangerous to children engaged in play. 45 Cyc. 802, 803.

The motion to direct a verdict was not well founded, as the evidence fully substantiated the averments of the petition. We note the more prominent facts the evidence proved or tended to prove at the trial.

Most of the evidence was undisputed. The physical conditions at the mine premises and transformer house were depicted and illustrated by exhibits. There was no day watchman, fencing, or warning sign. The doors of the house were open. Two of the wires carried high voltage, when the switch was open. The defendant's electrician knew before the accident they were bare in places. Children had played at the mine and about the transformer house for 9 years. The night watchman saw them and never interfered. Plaintiff, a youth 13 years old, had played about the house seven or eight times before the accident and had played there when workmen were present, and the door of the house was then open. Other children played there at the time. On the day of the accident, plaintiff first went to play at the house of his companion, L. D. Ray. Both were school children in the neighborhood, of about the same age. They went to Treece, Kan., playing about the box cars. In the afternoon, they went to the mine, passing the transformer house with the door open, climbed on the jack bins, rode on a car, and saw the machinery. At plaintiff's suggestion they went into the house as they had done before to play with a handle, attached to a wire and fastened on a tin box. Both played with the machinery. Plaintiff did not know the hidden danger. His account was that after he had sat down and was putting some bolts through a hole, Ray took some gloves from his (plaintiff's) pocket and as the plaintiff arose to get them Ray pushed him down on the wires, which so badly burned his arms that amputation of both was necessary. The

accounts of the youths varied to an extent, Ray claiming that plaintiff climbed upon an 8-foot platform and pulled a switch. The public had for years used without objection a path running across the mine premises within 15 feet of the transformer house door, and thence across a bridge spanning across a pond. About a week before the accident the apparatus in the house was repaired and new hoist wires added.

The foregoing and other details omitted for the sake of brevity were in evidence. For the like reason the petition is deemed sufficient, we hold the evidence ample to withstand the motion to direct a verdict for the defendant, and that motion was properly overruled.

We have examined the instructions to the jury and find them free from any material error, with one exception. The issues were explained and the jury advised as to the duty of reasonable care of the company toward the plaintiff, if it permitted the children to use the transformer house and immediate premises as a playground, and acquiesced therein; and, further, that if it negligently omitted that duty, and this proximately caused the injury to plaintiff, it was liable in damages therefor. The instructions tendered appear to us either to have been not justified or substantially given to the jury.

The court charged the jury that in fixing damages it should consider plaintiff's impaired earning capacity as well as the pain and suffering due to the injury. The defendant duly excepted to this part of the charge. This request was refused: "The jury is not to consider in connection with any damages which it may award the plaintiff, any sums expended or indebtedness incurred by the parent or parents of the plaintiff as a result of plaintiff's injuries in the way of doctor's bills, medicine, hospital bills, etc., nor the value of his services to such parent or parents from the date of his injury to the date of his majority."

There was no prejudicial error in not so charging the jury. No claim was made for the expenses referred to, and they were necessarily excluded by the court. The value of plaintiff's services to his parents was not claimed in any way, and it is to be presumed they were rendered gratuitously, so that no loss in that connection could reasonably have been allowed.

But the instructions were broad enough to warrant an allowance for lost earning capacity prior to the time plaintiff reached his majority. Section 8026, Compiled Oklahoma Statutes 1921, provides that the earnings of a minor belong to his father, or, if he be dead, to his mother. However unfortunate this error may have been, and although we may consider the verdict in this case for $15,000 was meager compensation for the injury to the plaintiff, we are unable to determine that a substantial part of the award was not a sum due the mother, which the plaintiff was not entitled to recover. Shawnee Gas & Electric Company v. Hunt, 32 Okl. 368, 122 P. 673; Farrar v. Wheeler (C. C. A.) 145 F. 482. For this error, the judgment is reversed, and the cause is remanded to the District Court, with direction to grant a new trial.