### EMPIRE DISTRICT ELECTRIC CO. v. HARRIS.

### No. 10277.

Circuit Court of Appeals, Eighth Circuit.

March 9, 1936.

---

Paul W. Barrett, all of Springfield, Mo., and Calvin, Vandeventer & Kimbrell, of Kansas City, Mo., on the brief), for appellee.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from a judgment on verdict awarding damages for personal injuries to a child of fourteen years of age. The injury came from a charged wire on a support between two skeleton steel towers utilized by appellant in connection with a transformer station. The action is based on negligence in not properly guarding the towers which, it is claimed, were attractive to children, and in not warning them of the dangers there. The towers were located entirely on private property of appellant. The issues here have to do with the sufficiency of the evidence to authorize submission to the jury. It is advisable to state the applicable rules of law so that the sufficiency of the evidence can be measured thereby.

█ The existence and the extent of the duty of safeguarding from a danger on private premises is controlled by the legal status of the person subject to such danger. If such person be one who is rightfully present, the duty is to use reasonable care under all the circumstances to protect him from the danger. If such person be a trespasser, the duty is only to refrain from wilful or wanton injury to him.

█ Whether a person coming on the premises in the vicinity of the danger is or is not a trespasser depends upon his being there without or with permission. Such permission may be inferred from various facts. One such set of facts is that where something is maintained on the premises which would naturally attract children from where they have a right to be, the maintenance of such attraction is given the legal force of an invitation and a child responding thereto is not a trespasser but an invitee as to the object and vicinity so attracting him. Being such, the duty exists to use reasonable care to guard the child from dangers to which it would be there exposed. Also, the situation that children may thus be there has a vital bearing upon what constitutes the "reasonable care" to be exercised—it must be such care to protect children.

BOOTH, Circuit Judge, dissenting.

Arthur C. Popham, of Kansas City, Mo., and A. E. Spencer, of Joplin, Mo. (A. E. Spencer, Jr., of Joplin, Mo., and Guy M. Cowgill and John F. Cook, both of Kansas City, Mo., on the brief), for appellant.

William L. Vandeventer, of Springfield, Mo. (F. W. Barrett, J. Herbert Taylor, and

Whether children will be so attracted by a thing is a matter of fact. Sometimes this fact appears from the very character of the thing without more. Sometimes this is not true and then the usual method of proof of attractiveness is by actual resort of children thereto. Such actual resort must be brought to the knowledge (actual or implied) of the landowner before he is treated as having to anticipate the presence of children and therefore having to use reasonable care to guard against injury to them.

Granted, however, that there is an object which is calculated to attract children to a certain portion of the premises, the only effects thereof are to make the children invitees and to impose upon the owner the duty of using reasonable care to safeguard them there. Whether he then uses such care is an entirely different question—the question of negligence vel non under those circumstances. The above statement as to legal rules is based upon cases in the Supreme Court and this court as follows: Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882; New York, N. H. & H. R. Co. v. Fruchter, 260 U.S. 141, 43 S.Ct. 38, 67 L.Ed. 173; United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28; Union Pac. R. Co. v. McDonald, 152 U.S. 262, 14 S.Ct. 619, 38 L.Ed. 434; Sioux City & P. Railroad Co. v. Stout, 17 Wall. 657, 21 L.Ed. 745; Olson v. Ottertail Power Co., 65 F.(2d) 893; Hardy v. Missouri Pac. R. Co., 266 F. 860; Shellaberger v. Fisher, 143 F. 937, 5 L. R.A.(N.S.) 250.[1] Another case in this court

(not of attractive nuisance) of value is Reynolds v. Iowa Southern Utilities Co., 21 F.(2d) 958.

Appellant challenges the evidence as insufficient to show: (1) That the tower on which the injury occurred was an attractive nuisance; (2) that it had any knowledge that boys would go to the place on the tower where the injury occurred; and (3) that it was negligent in protecting children from the cause of the accident and also, that the evidence conclusively shows that appellee was guilty of contributory negligence. Expressly without examining or determining that the tower was or was not an attraction to children or that appellee was or was not negligent (as to each of which there certainly is serious doubt as to the sufficiency of the evidence), we will treat the case on the assumption that the tower was attractive and that appellee was not negligent. This we do because we are convinced that no negligence was shown and because such determination disposes of the appeal. Only such statement of the evidence as is needed to determine the issue of appellant's negligence will be stated.

In its business of furnishing electric current, appellant maintained a transforming station located in the country about one mile from the town of Ozark, Mo. All of the transforming apparatus was contained in a building which was kept securely closed and locked. The wires carrying current to and from this building were carried on two skeleton steel towers which stood north and south and were located near the east side of the transformer building. The transformer house and towers had

[1] Cases in other circuits which apply, distinguish or discuss this subject are Consolidated Lead & Zinc Co. v. Corcoran, 37 F.(2d) 296 (C.C.A. 10); Crawford v. Rice, 36 F.(2d) 199 (C.C.A. 5); Branan v. Wimsatt, 54 App.D.C. 374, 298 F. 833, 36 A.L.R. 14; Public Service R. Co. v. Wursthorn, 278 F. 408 (C.C.A. 3); American Ry. Exp. Co. v. Crabtree, 271 F. 287 (C.C.A. 6); Troglia v. Butte Superior Mining Co., 270 F. 75 (C.C.A. 9); Heller v. New York, N. H. & H. R. Co., 265 F. 192 (C.C.A. 2); National Metal Edge Box Co. v. Agostini, 258 F. 109 (C. C.A. 2); Great Northern Ry. Co. v. Willard, 238 F. 714 (C.C.A. 9); Chesko v. Delaware & Hudson Co., 218 F. 804 (C. C.A. 3); Coeur d'Alene Lumber Co. v. Thompson, 215 F. 8, L.R.A.1915A, 731 (C.C.A. 9); Escanaba Mfg. Co. v. O'Donnell, 212 F. 648 (C.C.A. 6); Erie R. Co. v. Swiderski, 197 F. 521 (C.C.A. 3); Northern Pac. R. Co. v. Curtz, 196 F. 367 (C.C.A. 9); St. Louis & S. F. R. Co. v. Underwood, 194 F. 363 (C.C.A. 5); Snare & Triest Co. v. Friedman, 169 F. 1, 40 L.R.A.(N.S.) 367 (C.C.A. 3); Peirce v. Lyden, 157 F. 552 (C.C.A. 2); Thomason v. Southern R. Co., 113 F. 80 (C.C. A. 4); Cleveland, C. C. & St. L. R. Co. v. Ballentine, 84 F. 935 (C.C.A. 7). Also see Erie Railroad Co. v. Hilt, 247 U.S. 97, 101, 38 S.Ct. 435, 62 L.Ed. 1003; Atlanta & W. P. R. Co. v. Green, 246 F. 676, 678 (C.C.A. 5); Riedel v. West Jersey & S. R. Co., 177 F. 374, 378, 28 L.R. A.(N.S.) 98, 21 Ann.Cas. 746 (C.C.A. 3); New York Central & H. R. R. Co. v. Price, 159 F. 330, 333, 16 L.R.A.(N.S.) 1103 (C.C.A. 1); McCabe v. American Woolen Co., 132 F. 1006 (C.C.A. 1) approving (C.C.) 124 F. 283; Smith v. Hopkins, 120 F. 921, 924 (C.C.A. 7).

stood there for about twenty years before this accident. The higher powered wires (66,000 volts) were located at the extreme tops of the towers. The lower voltage wires (2,300 volts) were located toward the center of a single four inch channel iron connecting the towers and about 15 feet from the ground. The towers were between 35 and 40 feet high and between 12 and 13 feet square. They were constructed of four inch angle iron. The perpendicular uprights were imbedded in concrete blocks rising 6 to 8 inches above the ground. There were various horizontal irons which had a flat side on top being attached to the uprights by the other angle side—the lowest crosspiece being between 12 and 13 feet from the tops of the concrete bases. On each side, there were two diagonal braces starting just above the concrete bases and crossing at and fastened to the lowest horizontal iron. On the west side of the south tower there was a platform running the entire side and about 2½ feet wide. Several metal cleats or steps were fastened to the northwest upright and leading to the platform. The evidence is in conflict as to how many of these cleats and as to the height of the lowest one, but it seems clear that the lowest one was high enough above the concrete base to be out of reach of any but a well-grown boy standing on the base. There were no cleats or platform on the north tower. The towers were about 12 feet apart.[2] About 15 to 16 feet above the ground, a 4-inch angle iron, having one flat side up, connected the towers at the east sides—running from the northeast corner of the south tower to the southeast corner of the north tower. In the top of this crosspiece were inserted six wooden pins to carry insulation for wires. These pins were 4½ inches high and, with the glass or porcelain insulators, 6½ inches. As well as can be calculated from the photographs, these pins began about one-fourth the distance from each tower and were located in the central half of the crosspiece. At the time of the accident, the two pins nearest the south tower (having the platform) were bare of wires and insulators. The third pin had both—the wire carrying a voltage of 2,300 volts. It was this wire which caused the injury.

The manner in which the accident occurred was as follows: Plaintiff was a rather large boy fourteen years old. He and another boy, a year younger, were tending several cows which were grazing not far from the towers, on July 12, 1933. Shortly after noon, they decided to ascend to the platform on the south tower where they could comfortably watch the cows; the platform being then shaded by the transformer house. The plaintiff preceding, the boys climbed a short way on the tower struts to where they could reach the cleats and thence to the platform. After remaining there awhile, plaintiff proceeded alone along a horizontal channel iron along the north side of the south tower until he reached the northeast corner of the tower. Then he went down a short distance (probably something over a foot) to the cross iron connecting the towers. He straddled this iron and, with one hand behind him and the other in front, he "shimmied" himself along the iron. He reached and lifted himself over the two vacant wire pins which were 4½ inches high. Just how he came in contact with the live wire on the third pin is not clear in the evidence, since plaintiff did not take the stand and the other boy was then climbing down the tower from the platform and apparently engrossed therein. However, he did contact the wire and was very severely injured by the electric current therein.

The situation thus presented is that there were but two ways in which this wire (and the other two wires on the cross-arm) could be reached. One was by climbing 15 feet up a vertical 4-inch channel iron to the cross-arm or by taking the route (taken by plaintiff) of climbing up to the platform and then passing along an entire side of the south tower on a 4-inch channel iron and then getting on to the cross iron. Even when the cross iron was reached the wires were still safely beyond reach. To get to the wires required perilous progress along a 4-inch channel iron 15 feet in the air with no other thing to hold to. Further, before reaching the wire it was necessary to pass over two pins 4½ inches high. Also, there is not one syllable of evidence that this cross-arm, the wires on it, or anything about it held any attraction to children. It is not possible for us to conclude that appellant should, in the exercise of even a high degree of care, have anticipated that any child large and strong

---

[2] This and several other measurements stated herein are not stated in the evidence but are deduced from measurements in the evidence and from inspection and scaling of the photographs introduced.

enough to reach these wires would ever attempt to go where they were. "Anticipation," as we said in Hardy v. Missouri Pac. R. Co., 266 F. 860, 863, "means probability, not possibility." In Fort Smith Gas Co. v. Cloud, 75 F.(2d) 413, 415, 416, we said: "The consequence of the negligent act must be within the range of probability as viewed by the ordinary man, and consequences which are merely possible cannot be regarded as either probable or natural. * * * One is bound to anticipate only the reasonable and natural consequences of his conduct. * * * No one is required to guard against that which a reasonably prudent person, under the circumstances, would not anticipate as likely to happen." See, as other cases in this court to the effect that negligence can exist only where the occurrence is within the *probable* consequences, St. Mary's Hospital v. Scanlon, 71 F.(2d) 739, 743; Davis v. Schroeder, 291 F. 47, 49; Crane Co. v. Busdieker, 255 F. 664, 666; Chicago, B. & Q. R. Co. v. Gelvin, 238 F. 14, 23, L.R.A.1917C, 983.

This rule of care is applicable to children as well as adults. In Duree v. Wabash R. Co., 241 F. 454, 457, this court said: "It is true that children can recover for injuries in circumstances in which adults cannot; but there can be no recovery, even in the case of a child, unless there is negligence, and there can be no negligence without a breach of duty." In Felton v. Aubrey, 74 F. 350, 353 (C.C.A.6), Judge (afterwards Mr. Justice) Lurton said: "If there was no breach of duty, then there was no wrong, irrespective of the boy's capacity to know that what he was doing was dangerous."

Nor was there any evidence of actual happenings, prior to this accident, which could affect the "anticipation" of appellant that injury might result to children from the location of this charged wire. Plaintiff placed ten witnesses upon the stand to show the relation of children to these towers. That evidence showed that children frequently came by the towers on their way to or from fishing, swimming, or skating in and on a nearby creek. That often they would stop and play about and under the towers—looking for pieces of wire or other scrap material dropped by workmen on the towers, in looking for grasshoppers for fish bait or just in playing childish games. Sometimes they would be there for an hour. Sometimes they would catch hold of the lower parts of the towers which they could reach from the ground and swing on them. Only two instances are shown where any boy had climbed up either tower. In one of these two, a boy seventeen years old at the time testified he had climbed high enough to reach up to the platform but he had not gone thereon. In the other, witness, who had passed the towers frequently for nine or ten years, saw "I would not say a young like boy" sitting on the platform. In neither of these instances was any one connected with the appellant present.

Obviously if plaintiff had been an adult there could have been no recovery, for he would have been a trespasser—not only as to the towers generally but particularly as to the place of danger on the towers. In the Hardy Case, supra, 266 F. 860, at page 863, this court said: "There must be a reasonable expectation of the presence of children at the * * * place of danger before there arises a duty to guard them from that danger." In New York, N. H. & H. R. Co. v. Fruchter, 260 U.S. 141, at page 145, 43 S.Ct. 38, 39, 67 L. Ed. 173, the court, in denying liability for injury to a small child which had climbed the trellis work of a bridge and been injured by an electrically charged wire which he could reach therefrom, said: "Considering the peculiar circumstances of the present cause, it is clear that if the plaintiff had been an adult he could not recover; and we are unable to find any sufficient evidence from which the jury could have properly concluded that the railroad company either directly or by implication invited or licensed him to climb upon the strut to a point from which he could touch the bare wire 30 feet above the street." Here there was no evidence at all of any attraction to children to draw them where this dangerous wire was and there was no reason to anticipate they would ever go there.

Thus, whether tested by negligence toward children playing about and under the towers or by implied invitation to them to go where this wire was, we can find no ground to sustain submission of this case to the jury.

■ Appellee strongly contends that a fence or other preventive guard or a warning sign of danger was necessary to absolve appellant from negligence. What is necessary to constitute proper care and thus prevent negligence depends upon the circumstances of each situation. Appellant

was not necessarily confined to a choice of the means of avoiding danger and injury which appellee urges. It might as effectively use others, among which placing the danger out of probable reach is quite usual. That is why charged wires are placed on high poles. The same thought and action govern every parent in placing dangerous things where they reasonably think their children cannot get them.

The judgment is reversed, and the case remanded for a new trial.

BOOTH, Circuit Judge, dissents.