[S. F. No. 4208.     Department One.—May 11, 1908.]

## STANLEY STERNE, by William G. Cousins, his Guardian ad Litem, Respondent, v. MARIPOSA COMMERCIAL AND MINING COMPANY, Appellant.

NEGLIGENCE—MASTER AND SERVANT—PLEADING — ALLEGATIONS AS TO LEGAL DUTY OF DEFENDANT.—In an action by an employee against his employer to recover damages for personal injuries alleged to have been occasioned by the latter's negligence, mere allegations of the legal duty of an employer to his employees in the matter of furnishing suitable tools and appliances, and keeping the same in proper repair, tender no issue of facts, and the failure to deny them in the answer in no way affects the determination of the case, which must be determined upon the facts admitted or proved, in the light of the law as settled by the statutes and decisions.

ID.—DIFFERENT THEORIES OF LIABILITY—FAILURE TO FURNISH SUITABLE APPLIANCES.—In such an action, where the plaintiff sought to hold the defendant liable upon the theory that it had failed to use reasonable care in the matter of furnishing suitable appliances to the plaintiff with which to work, and also upon the theory that it had negligently sent him, without warning, to work in a dangerous place, and it is impossible to determine from the record upon which theory the jury rendered a verdict against the defendant, a reversal will be ordered, if any prejudicial error was committed by the trial court in regard to the issue relative to the furnishing of suitable appliances.

ID.—EVIDENCE—CROSS-EXAMINATION—MOTION TO STRIKE OUT.—On the trial of such action, the plaintiff, on his direct examination, testified as to the mechanical appliances that were and were not on the premises where he was working, and described their construction.

On cross-examination, he was asked where he acquired the information he had given respecting such appliances. In response, against the defendant's protest and motion to strike out, he was permitted to answer that he was told by a certain person, who was an employee of the defendant, having charge of part of the machinery, that if a certain different appliance had been used he never would have been hurt. *Held,* that the answer was not responsive to the question, and that the refusal to strike it out was prejudicial error.

ID.—DESIGNATION OF EVIDENCE TO BE STRICKEN OUT.—The rule that where a portion of the testimony of a witness is unobjectionable the party moving to strike out must designate with precision the particular portion challenged, has no application where the whole answer is subject to the objection made.

ID.—INSTRUCTIONS AS TO NEGLIGENCE—WANT OF CARE IN FAILING TO FURNISH PARTICULAR APPLIANCE.—In an action by an employee against his employer to recover damages for personal injuries on the ground of the latter's alleged negligence in failing to furnish suitable appliances with which to work, instructions to the jury are erroneous which make the question of the defendant's negligence to turn on the conclusion of the jury as to whether or not the appliance furnished and used was in fact suitable for the work as it was then being done, without regard to whether or not there had been any want of ordinary care on the part of the defendant or its personal representative, in failing to furnish another kind of appliance.

APPEAL from a judgment of the Superior Court of Mariposa County and from an order refusing a new trial. J. J. Trabucco, Judge.

The facts are stated in the opinion of the court.

Lindley & Eickhoff, J. M. Corcoran, and B. L. Quayle, for Appellant.

Charles F. Hanlon, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendant from a judgment in favor of plaintiff for seven thousand dollars damages for personal injuries, alleged to have been suffered by him through the negligence of defendant, and from an order denying its motion for a new trial.

Plaintiff, a boy nearly seventeen years of age, was in the employ of defendant at its mine in Mariposa County. There was a hoisting plant operated by steam used in the mining work, and plaintiff was employed as fireman and in assisting

around the engine used as a part of such hoisting plant, and to perform certain other duties such as running the air compressor, etc., and there was evidence sufficient to sustain a conclusion that he was required to work wherever directed by one Pettis, the engineer of defendant. On March 13, 1903, certain repair work was done on the bearings on the pillow block of the hoist, on which bearings revolved the shaft of a cogged wheel. This work was done by Maguire, the general foreman and representative of the company at the mine, Pettis, Mills (a machinist), and one Thorn. This work having apparently been satisfactorily completed, Maguire ordered the engineer to start up the engine, and he and Thorn left the engine-room. The engine having been started, Mills was engaged in making a final adjustment about the pillow block and bearings, and, for the purpose of tightening one of the nuts, had applied to the nut a wrench variously denominated in the record a spanner or stationary wrench. At this point plaintiff appeared upon the scene. There was in plaintiff's own testimony evidence sufficient to support a conclusion that Pettis told plaintiff to get a monkey wrench and assist Mills in his work, although the other evidence indicates that Mills was already using a monkey wrench in connection with a spanner wrench in tightening the nut, the nut being so situated that it could not be turned without a combination of two wrenches. A monkey wrench was applied to the spanner wrench being used by Mills, and Mills holding in place the spanner wrench, plaintiff turned the spanner wrench by means of the monkey wrench, and was in the act of making a second turn when, according to plaintiff's contention, the spanner wrench in Mills's hands slipped sideways from the nut, and plaintiff's hand, in consequence thereof, came in contact with the cogs of the wheel and was so mutilated as to require amputation. The nut was hexagonal, and there had been supplied no socket wrench which would fit it.

Much is said in the brief of counsel for plaintiff as to the effect of the failure of defendant to deny certain allegations of the complaint which we take to be nothing more than attempted allegations of the legal duty of an employer to his employees in the matter of furnishing suitable tools and appliances, and keeping the same in proper repair. Such allegations had no proper place in the complaint and tendered

no issue of fact. The failure to deny them in the answer in no way affects the determination of the case, which must be determined upon the *facts* admitted or proved, in the light of the law as settled by our statutes and decisions.

The basis of the alleged liability of defendant for the injury suffered by plaintiff was, 1. The claim that the defendant negligently failed to furnish a proper wrench for the tightening of this particular nut, the claim being that a socket wrench, to be used in connection with the monkey wrench, was the only proper and safe appliance for the particular work, and, 2. The claim that defendant was negligent in sending plaintiff, alleged to be an inexperienced minor, without warning, into a place and position of danger. It is earnestly urged that the evidence was insufficient to suport a conclusion that there was any negligence in the failure to furnish a socket wrench. We deem it unnecessary to consider this contention in view of the fact that the judgment and order must be reversed for an error occurring at the trial.

It is impossible for us to say upon which theory the jury rendered the verdict against defendant, whether upon the theory that it had failed to use reasonable care in the matter of furnishing a safe and suitable wrench, or upon the theory that it had negligently sent plaintiff, without warning, to work in a dangerous place. It follows that if prejudical error was committed in regard to the issue relative to the wrench, a reversal must be had.

Plaintiff, in his testimony on direct examination, having spoken of a "stationary wrench" and a "monkey wrench," stated that there was no socket wrench on the premises, and no wrench similar thereto. He then described a socket wrench as being one with six sides and covering the whole of the six-sided nut, whereas the stationary wrench covered only two sides of such nut. This was his only testimony in relation to wrenches on direct examination. On cross-examination he was asked by defendant's counsel: "Well, where did you acquire the information which you gave in response to the questions recently asked you by Mr. Hanlon in reference to stationary wrenches, or socket wrenches?" The plaintiff in answer was proceeding to state that he had been told certain things by one of the men, when he was interrupted by defendant's counsel with a statement that what he was saying was not

an answer to the question and they did not want it. Plaintiff's counsel insisted that the plaintiff be allowed to finish the answer he was giving, and, against the protest of defendant, the witness was allowed to give the following so-called answer: *"I was told by J. H. Lind that if a socket wrench had been used I never would have been hurt."* Defendant's counsel immediately moved that the answer be stricken out on the ground that it was not responsive to the question, and earnestly and at length set forth the reasons in support of the motion, but the trial court denied the motion and allowed the answer to stand. It was subsequently made by plaintiff to appear that J. H. Lind was an employee of defendant at the mine who had charge of a part of the machinery, and who, presumably, had considerable knowledge concerning the matter under inquiry. There was thus placed before the jury as proper evidence for their consideration in determining the cause of the accident and the question of defendant's negligence, the extra-judicial statement of a man whose opinion was apparently entitled to some weight, as to the exact cause of the accident. That statement was of such a nature as to intimate negligence on the part of defendant in not supplying a socket wrench. It came to the jury without the sanction of an oath and without opportunity to defendant to cross-examine the maker of the statement. We can conceive of no ground upon which the ruling of the court denying the motion to strike out this answer can be sustained. The answer of the witness was wholly and entirely irresponsive and foreign to the question asked. The rule that where a portion of the testimony is unobjectionable the party moving to strike out must designate with precision the particular portion challenged, relied on by plaintiff's counsel, of course has no application where the whole answer is subject to the objection made. Counsel for plaintiff makes a futile attempt to show that a portion of the answer here— namely,—"I was told by J. H. Lind,"—was responsive. But these words cannot be thus separated from the remainder of the answer, for to so separate them would be to make them express something not within the meaning of any part of the answer. No part of the answer as given, when considered as a whole, stated that the witness had received any information on the matters concerning which he had testified on direct examination from J. H. Lind. The answer of the witness can-

not thus be mutilated and distorted from its original meaning. It was an answer expressive of a single thought, absolutely foreign to any matter embraced in the question asked by counsel for defendant. It is not material that the so-called answer was given to a question asked by the counsel for defendant on cross-examination. "While the rule may be somewhat stringent as to concluding a party by the answers of his own witnesses in general response to a question, or binding him by irrelevant answers to irrelevant questions, still it never has been held, or should be, that a party is bound by the irresponsive answers of his adversary's witnesses, and we cannot understand why it should seriously be contended for." (*Estate of McKenna,* 143 Cal. 580, 587, [77 Pac. 461].) It is idle to urge that the answer was entirely harmless. There is no warrant in the record for any such conclusion on our part. It was by no means a self-evident proposition, as suggested by counsel for plaintiff, that the accident was due to the failure to use a socket wrench instead of a spanner or stationary wrench. The claim of plaintiff's counsel that there was testimony to the same effect given by defendant's witnesses is not well founded. It is impossible for us to say what weight and influence this improper evidence of plaintiff had on the minds of the jury in determining the question of defendant's liability. The error of the trial court must be held prejudicial. (*Short* v. *Frink,* 151 Cal. 83, [90 Pac. 202], and cases there cited.)

The trial court, at the request of plaintiff, gave to the jury a number of instructions in each of which the court explicitly directed them to find a verdict for plaintiff, or explicitly declared plaintiff to be entitled to a verdict, in the event that they found certain things specified therein to be true. Any such instructions should, of course, embrace all the things necessary to show the legal liability of the defendant and to warrant the direction or conclusion contained therein that plaintiff is entitled to a verdict. (See *Killelea* v. *California etc. Co.,* 140 Cal. 604, [74 Pac. 157].) The following are fair samples of these instructions:—

### Plaintiff's Instruction No. 8.

"I instruct you, gentlemen, that the parties have in their pleadings here admitted that it was the defendant corpora-

tion's duty, and its own personal duty, to furnish and supply a fit engine, keep it in repair, and to supply a sufficient number of wrenches, and to discard old ones, and to supply new and fit ones of each kind, and to test and inspect said wrenches, and to put each in safe condition before use. Now, I instruct you that if you find that the company and that Maguire, its foreman, *failed to furnish or supply a suitable, fit and proper wrench on March 13th, 1903*, and that the said Mills was obliged to use the wrench he actually did use to turn the engine nut, and that Stanley Sterne was injured by the flying off of the said wrench from the engine nut, he, Stanley Sterne, and his fellow servants not being guilty of contributory negligence, but acting in the scope of his duty as directed by said Maguire (if said Maguire gave any directions) then *I instruct you, gentlemen of the jury, that you must return a verdict here into this court in favor of the plaintiff and against the defendant corporation herein."*

Plaintiff's Instruction No. 9 so far as material:

" . . . If you find that the defendant and Maguire, its foreman, *failed to furnish a suitable wrench for Mr. Mills to use in tightening the engine nut on March 13th, 1903, and that* owing to the unfitness of the wrench that was used by Mills at the time, the injury was caused to plaintiff, without any contributory negligence on plaintiff's part or on the part of any of his fellow servants, then I instruct you that the injury was caused by the defendant's fault and neglect of duty and that the verdict of this jury should be brought in here in favor of Stanley Sterne, the plaintiff, and against the corporation defendant."

It is unnecessary to further consider these instructions than to point out that they were erroneous in that they made the question of defendant's negligence to turn on the conclusion of the jury as to whether or not the spanner or stationary wrench furnished and used was in fact a suitable wrench for the work as it was then being done with the machinery in motion, without regard to whether or not there had been any want of ordinary care on the part of the defendant, or its personal representative Maguire, in failing to furnish a socket wrench. It was essential to the existence of negligence on the part of the defendant in the matter, not only that the ap-

pliance was in fact not a safe appliance for the work, but also that the defendant or its representative Maguire knew, or ought in the exercise of reasonable care for the safety of its employees to have known, that the wrenches furnished were not safe and sufficient. (See *Malone* v. *Hawley*, 46 Cal. 409.) The obligation of an employer in such matters is simply to use reasonable care, that degree of care, as was said by Judge Lurton in a decision of the United States circuit court of appeals, "which a man of ordinary prudence in the same line of business would be expected to exercise to secure his own safety were he doing the work." (*Westinghouse etc. Co.* v. *Heimlich*, 127 Fed. 94. See, also, *Dolan* v. *Sierra Ry. Co.*, 135 Cal. 436, [67 Pac. 686].) As we have already intimated, there is nothing in the condition of the pleadings in this case to enhance this obligation. Even if it was made to appear here that a socket wrench would have been a safer appliance to use under the conditions of the particular work in hand, there was ample evidence to justify a conclusion that there was in the failure to furnish a socket wrench no want of reasonable care on the part of defendant, or its representative, Maguire— that a reasonably careful man, as solicitous for the safety of his employees as he would be for his own safety, would have considered the wrenches furnished entirely safe and adequate for all work to be done by the employees—that such wrenches so furnished were such as experience sanctioned as reasonably safe. This element was entirely omitted from these instructions, and the trial jurors were thus explicitly instructed that if, from the evidence given on the trial, they believed that the wrenches furnished were not in fact "suitable, fit and proper," they must find defendant guilty of negligence. Because of our conclusion that the judgment and order must be reversed for the error first discussed, it is unnecessary to determine whether error in these instructions can properly be held to have been without prejudice to defendant's cause in view of other instructions given by the court relative to the same subject, and we have discussed the matter solely for the purposes of a new trial.

It is unnecessary to discuss any of the other points presented.

The judgment and order denying a new trial are reversed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion thereon on the eighth day of June, 1908:—

BEATTY, C. J., dissenting.—I dissent from the order denying a rehearing upon the ground that the error of the superior court was, in view of all the evidence in the case, without prejudice. The answer of plaintiff which the court refused to strike out meant nothing more than that a socket wrench would not have slipped, and, as to that, there was no controversy. One of the defendant's witnesses testified to the same effect.