[L. A. No. 2868. Department Two.—January 14, 1913.]

## JAMES LONNERGAN, Respondent, v. CHARLES STANSBURY and J. B. HUGHES, Copartners, etc., Appellants.

Negligence—Employer and Employee—Furnishing Safe Appliances.—While a master is not obliged to furnish his employee with the latest improvements in machinery, tools, or appliances, he is always under the duty in the use of proper care, to furnish him with suitable machinery, tools, and appliances.

Id.—Wagon Without Brake and With Insecure Seat—Question for Jury.—Whether a wagon, furnished by an employer to his teamster for the purpose of hauling brick over a hilly road, was an unfit instrumentality by reason of its having no brake and an insecure seat, is a question for the jury, in an action by the employee to recover damages for personal injuries occasioned by the running away of the team attached to the wagon, while going down a grade.

Id.—Assumption of Risk by Teamster—Use of Unsafe Wagon for One Day.—It cannot be said, as matter of law, that the teamster assumed the risk of the defective condition of such wagon, where, after protesting concerning the absence of a brake and receiving the assurance of the foreman that he would not need one, he undertook the work with it, and was injured on the first day while so employed.

Id.—Instructions—Duty to Furnish Suitable Appliances—Failure to Exercise Reasonable Care.—In an action to recover for such injuries, a preliminary instruction declaring it to be a part of the duty of the employer "to furnish suitable appliances by which the service is to be performed and to keep them in repair and order and to make such provisions for the safety of the employees as will reasonably protect them from the dangers incident to their employment," will not be deemed erroneous for its failure to announce that the employer is liable only if he has failed to exercise reasonable care and diligence in the selection and furnishing of such appliances, if such qualification of his liability is repeatedly stated in subsequent instructions.

ID.—MEASURE OF DAMAGES—DAMAGES REASONABLY PROBABLE TO RESULT
    IN FUTURE.—An instruction in such action, that if the jury found
    for the plaintiff, he was entitled to recover for all damages proxi-
    mately resulting from the injury which he has suffered up to the
    time of the trial, and for all such damages that it is "reasonably
    probable" that he will sustain in the future, is not rendered erro-
    neous by the use of the phrase "reasonably probable," if it sums
    up its declaration of the law with the pronouncement of the correct
    rule embodied in section 3283 of the Civil Code, that he is entitled
    to recover for all damages "certain to result in the future."

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order refusing a new trial.
Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

Scarborough & Bowen, for Appellants.

Morton, Riddle & Hollzer, for Respondent.

HENSHAW, J.—Plaintiff was a teamster employed by de-
fendants, a contracting firm. His horses ran away. He was
thrown from the wagon in which he was riding and sustained
injuries. His action for damages against his employers re-
sulted in a verdict and judgment in his favor. From that
judgment and from the order denying their motion for a new
trial the defendants appeal.

The gravamen of the complaint lies in the allegation that
defendants furnished to plaintiff a wagon that was dangerous
and unfit to be used, in that there was no brake or other
appliance provided by means of which the wagon could be
impeded or stopped; that the sides of the wagon were loosely
and insecurely placed upon and attached to it, and thereby
plaintiff's seat, which consisted of a board placed horizontally
across the sides, became insecure and dangerous. It is then
alleged that while plaintiff engaged in his work was driving
this empty wagon down a hill, the horses became unmanage-
able, ran away and because of the swaying wagon box and
shifting seat and absence of brake the plaintiff was unable to
control them and was thrown from the wagon, when, in their
career, they dashed it against the curb.

The testimony supporting these allegations is sufficient. That of the plaintiff is to the effect that he was experienced in the use of horses; had been a teamster, and had driven this particular team of horses, which, it is conceded, were ordinarily gentle. He was told to put his horses in this particular wagon upon the morning of the accident and to haul bricks from a brick-yard, delivering them at various points where defendants were engaged in work. Prior to the accident he had never driven a wagon that was not equipped with a brake or some appliance for stopping it. When told by the foreman to use this particular wagon he noticed that it was without a brake and told the foreman that he wanted a brake on the wagon. The foreman replied that he needed no brake, as his draught was uphill; that he would have to haul brick but one day, and on the following day would go back to his former employment—that of driving a dump wagon. There was no seat in the wagon, simply a loose board across the side-boards. The seat shifted so, because of the swaying of the wagon box, that he tried to drive standing in the wagon, but he could not stand because of the swaying of the wagon bed. Once or twice during the day, on down grades, the team had started with him, but he had checked them. At the time of the accident he was returning with the team from his work. The horses had galled necks, the galled places being more inflamed at night after the day's work than in the morning. As he started down the grade it is probable that the first horse started because of the pain produced by the collar bearing on its galled neck in holding back the weight. The plaintiff at the time "had the lines through his hand." The other horse became frightened, and the first one lunged ahead and "the two horses just plunged right down that grade." The wagon box began to swing from side to side, the loose board upon which he was sitting fell off and precipitated plaintiff on his back in the wagon. He recovered himself as quickly as possible, but too late to prevent the wagon striking the curb.

This sufficiently indicates the evidence in the case, and from it appellants urge that there is not the slightest evidence of negligence upon their part, and, in the same connection, that whatever were the defects in the appliances furnished to plaintiff, he, as a skilled teamster, knew them, knew their

danger and accepted their risk. As to the first of these propositions, however, while it is quite true that the master is not obliged to furnish his employee with the latest improvements in machinery, tools, or appliances, he is always under the duty in the use of proper care to furnish him with suitable machinery, tools, and appliances. It was at least for the jury in this case to say whether, for the work in which the plaintiff was engaged, a wagon such as was furnished by defendants .came up to the requirements of the law as a suitable instrumentality. To the argument of appellants that it is not established that the lack of brake and insecure seat were, or was either of them, the proximate cause of the injury, it must be answered that while in such a case as this it never can be demonstrated beyond peradventure that if the seat had been secure, or if there had been a brake, the accident would have been avoided, still enough is shown to establish the probability, at least, that with the brake and the secure seat he could have controlled the horses which were recognized as being ordinarily a gentle team.

Upon the proposition of assumed risk, it is true that, after protest concerning the absence of a brake and the assurance of the foreman to the effect that he would not need one, plaintiff undertook the work with the wagon furnished. It is probably not true that he quite appreciated the defective condition of the wagon bed until he learned it by experience in driving. But this experience was his first day's experience. Unless we can say, under these circumstances, that it was the duty of the plaintiff to have abandoned his work upon the discovery, then we cannot say, as a matter of law, that plaintiff had assumed the risks with full appreciation of their nature and danger. But such a peremptory assertion of right and sudden cessation of employment is not expected of one in a dependent position. The case upon which appellants principally rely, and the one nearest to the case at bar in its facts, is *Limberg* v. *Glenwood Lumber Co.,* 127 Cal. 598, [49 L. R. A. 33, 60 Pac. 176]. There an experienced teamster fell or was thrown from his wagon and suffered the loss of a leg. He sued, alleging as here, the furnishing of defective appliances. The defects consisted ''of a wagon having no seat and also a pair of lines that were too short.'' The opinion of this court goes off upon the concession that the

appliances were defective, but holds that as plaintiff had continuously used them for a period of eleven months, without objection or protest of any kind, it must be held that he assumed all of the risks incident to their use. What has already been said makes plain the broad distinction between that case and the case at bar, where plaintiff had in fact protested over the absence of a brake, had been assured that he would not need a brake, and where he was engaged in his first day's employment with the defective appliance, under an assurance that the first would be the only day. These questions then were properly submitted to the jury, and its determination will not here be disturbed.

Touching asserted errors in the giving and refusing to give instructions, preliminarily it may be said that the instructions were quite as favorable to the defendants as the law warrants. In one of its earliest instructions, the court, speaking generally of the employer's duty, declared a part of that duty to be "to furnish suitable appliances by which the service is to be performed and to keep them in repair and order and to make such provisions for the safety of the employees as will reasonably protect them from the dangers incident to their employment." It is contended that this instruction was erroneous, in its failure to announce that the employer is liable only if he has failed to exercise reasonable care and ordinary diligence in the selection and furnishing of such appliances. If this instruction were standing alone, appellants' contention would have much force. (*Sterne* v. *Mariposa Com'l. Co.*, 153 Cal. 516, [97 Pac. 66].) But it is manifestly a preliminary announcement, and sound enough in and of itself. In point of law it *is* the employer's duty so to do, but in point of law he has fulfilled that duty when he has exercised ordinary care and diligence in securing proper appliances. All this was abundantly set forth in numerous instructions. It is found in many specific instructions proposed by the defendants and given by the court. So that we repeat, while if the instruction complained of stood alone, it would be impeachable as not containing a full exposition of the law, taken in connection with the numerous explanatory instructions which followed, there could have been no misunderstanding upon the part of the jury. The case does not present at all the same situation shown by the instructions in *Melone* v. *Sierra Rail-*

*way Co.*, 151 Cal. 114, [91 Pac. 522]. There the instructions were in absolute conflict and, it was said by this court, that it could not be determined under which the jury acted. Here there is no conflict in the instructions. There is in the preliminary instruction the absence of a qualification, the lack of a full exposition of the law, which absence and lack are fully and harmoniously set forth in all the succeeding instructions. Upon the measure of damages the court gave an instruction identical with one reviewed in *Hersperger* v. *Pacific Lumber Co.*, 4 Cal. App. 460, [88 Pac. 587, 591]. The instruction was there affirmed, and a petition for a hearing of the cause before this court was denied. The phrase "reasonably probable" may well be omitted from all such instructions and the statutory requirement of the Civil Code (sec. 3283) strictly adhered to. That section declares that a plaintiff is entitled to damages for "detriment resulting after the commencement thereof or *certain to result* in the future." But the instruction here in question, while using the unhappy phrase "reasonably probable," sums up its declaration of the law with the pronouncement of the correct rule.

For these reasons the judgment and order appealed from are affirmed.

Melvin, J., and Lorigan, J., concurred.