[Civ. No. 6982. Second Appellate District, Division Two.—December 15, 1931.]

FRANK B. CASSON, Respondent, v. THE ATCHISON, TOPEKA' AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

Robert Brennan, M. W. Reed, E. T. Lucey, Leo E. Sievert and H. K. Lockwood for Appellant.

Bertrand J. Wellman and Charles J. Kelly for Respondent.

CRAIG, J.—The defendant appealed from a judgment entered upon the verdict of a jury awarding to the plaintiff, its employee, damages alleged to have been sustained in rescuing a fellow employee from imminent peril.

The appellant was engaged in transporting passengers and freight in interstate commerce between points in the state of California and eastern terminals, and maintained a system of signals which were operated by wires suspended upon poles along its right of way. One Walter F. Springs, a lineman of the defendant company, was injured while working at the top of a pole. Casson, also a lineman, ascended the pole, caused a rope to be thrown over a cross-arm, placed it about Springs' body, and proceeded to descend with the latter on his shoulder, while several employees in turn held a portion of the weight and aided in lowering him by said rope, which they dealt out from the ground. During said descent respondent slipped at times, due to insecurity of spurs which he attached to the pole at each step, temporarily relieving him of the weight of the burden, which again was precipitated upon him as release of the rope permitted. In his complaint respondent alleged: "That the said employees holding the said rope in the lowering of the body of the said injured man did so in such a careless, negligent and unlawful manner that the entire weight of the injured man was thrown in a sudden and unexpected manner upon the plaintiff, whereby and because whereof plaintiff's spurs were caused to come out of the said signal pole and he was caused to slip down the said signal pole a

short distance, and that the said employees again further carelessly, negligently and unlawfully failed and neglected to hold the said rope taut and to support the body of the said injured man, whereby the same was caused to again fall upon the plaintiff with great force and violence, whereby he was injured."

The respondent's evidence is entitled to be viewed upon appeal in the light which most strongly tends to establish a want of such ordinary care as was chargeable to the appellant under the circumstances of the particular case. But it was the duty of the plaintiff upon the trial to prove by a preponderance of evidence that his injuries resulted from careless and negligent dropping or throwing of Springs upon him with force and violence, by a failure to hold the rope. He testified: "The boys left the rope pretty slack, and I was carrying pretty near all the weight, and I hollered to them to keep the rope tight, that I could not carry the whole load; and I got under a heavy load and one of my spurs cut out and let me,—oh, I probably stepped down six or eight inches, when the whole weight of Mr. Springs got on my shoulders, . . . and in going down every little while I was receiving the load, so it would be light and then I would receive it again; they were trying to pay the rope out and give me a chance to get out from under him." Another employee who had been discharged prior to the trial testified: "I was on the rope . . . I know there were two or three others. . . . I helped pay out the rope. . . . There was a jerk on the rope; I felt it. . . . I could see the pole, but I could not see what was going on very well, because I was in back. . . . As I remember they fell together to the ground . . . Mr. Springs fell on top. It got away from us. . . . Q. Do you know what caused that rope to get out of your hands? A. No." This witness further said: "I don't know if I let go of the rope entirely or not, but I know we lost control." The respondent admitted: "I was excited, . . . certainly I was excited." The appellant stresses the fact that all other employees swore that the discharged lineman who testified as above recited was not one of the men holding the rope, and that the rope did not slip; that his testimony was influenced by personal bias. However, affording the conflicting evidence its most favorable view in support of the

verdict and judgment, the jury must be presumed to have accepted the testimony of such witness at its full value. It results that the plaintiff failed to establish the vital fact of negligence under the uniform rule to be applied in such cases. No witness attempted to say that the employees holding the rope carelessly, negligently or in an unlawful manner caused the weight of Springs to fall or failed to hold the rope taut. The most that can be said of the testimony of any witness is that in the haste and excitement of the emergency, appellant's employees in acting suddenly to avoid further peril or injury to Springs, for some unaccountable cause permitted the rope to pass over the crossarm of the pole more rapidly than was requisite to his safety. That the respondent and his coworkers suddenly became responsible for the life of Springs, that they became excited, and that they acted promptly to the best of their judgment, is not disputed in the record nor in argument. That they rescued him without further harm and in a manner most convenient and effective under the circumstances, is not denied. Many other features, such as the heat of the day, Casson's physical exhaustion, the failure of his spurs to adhere to the pole, etc., though stressed, were not in issue as a proximate cause of the injury to the respondent.

■ "Negligence is a breach of duty. Where there is no duty or no breach, there is no negligence. An injury that is the natural and probable consequence of an act of negligence is actionable. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act or omission is either the remote cause or no cause whatever of the injury." (*Moody* v. *Gulf Ref. Co.*, 142 Tenn. 280 [8 A. L. R. 1243, 218 S. W. 817].)

■ The rule, judicially stated, is that one who in a sudden emergency acts according to his best judgment, and who, because of want of time in which to form a judgment, omits to act in the most judicial manner, is not chargeable with negligence. (20 R. C. L., p. 29.) "The obligation of an employer in such matters is simply to use reasonable care, that degree of care, as was said by Judge Lurton in a decision of the United States Circuit Court of Appeals, 'which a man of ordinary prudence in the same line of business would be expected to exercise to secure his own safety were he doing the work'. (*Westinghouse Elec. &*

*Mfg. Co.* v. *Heimlich,* 127 Fed. 92, 94 [62 C. C. A. 92]. . . . )'' (*Sterne* v. *Mariposa Com. & M. Co.,* 153 Cal. 516 [97 Pac. 66].) To recall the testimony of the respondent's most positive witness as to the proximate cause of the injury to himself, Springs fell on him, the rope ''got away from us'', as he stated, but he made no pretense even to hazard an opinion as to the cause of the rope getting out of their hands. No witness ventured to assert that any act attributable to the appellant was careless or negligent, nor to cite any act that could have been done which was not done. From all of which it follows that the foregoing authorities, and many others which might be cited, preclude a recovery of damages upon the facts presented. ▮ An appeal was taken from the order denying a new trial. There is no appeal from such orders.

The appeal from said order is dismissed. The judgment is reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 14, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 11, 1932.