## KATAOKA et al. v. MAY DEPARTMENT STORES CO. et al.

### No. 190-Y.

District Court, S. D. California, Central Division.

June 17, 1939.

August J. O'Connor, of Los Angèles, Cal., for plaintiffs.

Schell & Delamer, of Los Angeles, Cal., for defendants.

YANKWICH, District Judge (after stating the facts as above).

■ The question presented by the motion is interesting. It is novel also, because the high courts of California have not been called upon to determine it. So, if there were a conflict between decisions elsewhere, we might,—even in the absence of Erie R. Co. v. Tompkins, 1937, 302 U. S. 671, 58 S.Ct. 50, 82 L.Ed. 518,—choose to follow one group of decisions rather than the other,—following the one that appeals more to our sense of justice and right. See, Burgess v. Seligman, 1882, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359; Railroad Commission v. Los Angeles Ry. Co., 1929, 280 U.S. 145, 50 S.Ct. 71, 74 L.Ed. 234; Risty v. Chicago, R. I. & Pac. Ry. Co., 1926, 270 U.S. 378, 46 S.Ct. 236, 70 L.Ed. 641; Burns Mtg. Co. v. Fried, 1934, 292 U.S. 487, 54 S.Ct. 813, 78 L.Ed. 1380.

But, ultimately, I think that questions relating to attractive nuisances must be determined more according to general principles recognized in a particular state, as to what is and what is not a situation which calls for its application.

■ In a note in 6 Southern California Law Review, 255, the general agreement of courts as to the usual circumstances un-der which the doctrine is applied is stated in this manner: "The courts are agreed generally that such a doctrine is proper, but there is a great conflict as to what constitutes an 'attractive nuisance.' The tendency of the courts seems to be to limit the doctrine as far as possible without impairing justice. The one point of agreement is that natural objects, not placed on the property by defendant, are not attractive nuisances. California courts have taken the liberal side of this dispute and hold that the owner of machinery and appliances, dangerous and attractive to children of tender years, is liable where there is a failure on the part of the occupier to use ordinary care in safe-guarding such machinery or appliances. * * * It has been held that the doctrine does not apply to ponds of water, either natural or artificial, although a case has not arisen where the water was poisonous, as was the situation in United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28. The California courts have. held also that the doctrine does not apply to excavations, stables, playground apparatus or, in some cases, to trailers. *It has been held by some courts that unless the child goes on the land by reason of the temptation of the very instrumentality which is held to be the attractive nuisance, he cannot recover."* (Italics added.)

The doctrine declared in the last paragraph has the approval of the Supreme Court of the United States. See, United Zinc & Chemical Co. v. Britt, 1922, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28; Giannini v. Campodonico, 1917, 176 Cal. 548, 169 P. 80.

Cases have been called to the court's attention indicating that the courts of Massachusetts have held, without deviation, that an escalator is not an attractive nuisance, and that if a child goes upon it and suffers injuries,—not caused by any failure to maintain the equipment in proper condition, and not caused by using the equipment as it is intended to be used, but caused by using it in a contrary manner, the owner is not liable. See: Agnes Conway v. Boston Elevated Ry. Co., 1926, 255 Mass. 571, 152 N.E. 94; Holbrook v. Aldrich, 1897, 168 Mass. 15, 46 N.E. 115, 36 L.R.A. 493, 60 Am.St.Rep. 364.

A contrary ruling was made in Hillerbrand v. May Mercantile Company, 1909, 141 Mo.App. 122, 121 S.W. 326. A read-

ing of this case convinces me that the doctrine of attractive nuisance there stated does not correspond with the one followed in California.

I now refer to some cases supporting my conviction that, under no circumstances can we, in applying the law of California, hold that a thing which is a common instrumentality, used in a store for a definite, common purpose, may be rendered an attractive nuisance by the action of a child in sticking his hand into a small opening which is on the floor, and which could not be reached unless the child crawled towards it, which is not the use for which it was intended.

The leading case is Peters v. Bowman, 1896, 115 Cal. 345, 47 P. 113, 114, 598, 56 Am.St.Rep. 106. That was a pond case. I do not deal with the facts, as they do not concern us, but I refer merely to the basis of the decision. Speaking of the "turntable cases", the court says: "The rule originated in a case where a railroad company had erected on its land near a public way a turntable, and left it unlatched and unprotected, and young children, attracted by the turntable, went upon it to play, and started it in motion, whereby one of them was injured; and the rule, as thus applied, rested on the ground that the immature judgment of a young child could not well determine or provide against the danger of meddling with such machinery, and that therefore, the railroad company was liable for legal negligence in erecting it and leaving it exposed, as an attraction to children and a temptation to them to intermeddle with it. See Barrett v. Southern Pac. Co., supra [91 Cal. 296, 27 P. 666, 25 Am.St.Rep. 186], and cases cited on page 303, 91 Cal., and on page 667, 27 P. But the rule of the Turntable Cases is an exception to the general principle that the owner of land is under no legal duty to keep it in a safe condition for others than those whom he invites there, and that trespassers take the risk of injuries from ordinary visible causes; and it should not be carried beyond the class of cases to which it has been applied. And the cases to which the rule has been applied, so far as our attention has been called to them, are nearly all cases where the owner of land had erected on it dangerous machinery, the consequences of meddling with which are not supposed to be fully comprehended by infant minds. It has also been applied to a few other cases, where the owner, by some affirmative act, has caused some artificial danger to exist on his premises, as in the case of Bransom v. Labrot, 81 Ky. 638 [50 Am. Rep. 193], cited by appellant, where the defendants had 'stacked a large quantity of lumber in one large and irregular pile, so negligently and badly done that, as the deceased, an infant, was playing near it, one of the timbers fell upon and killed him.' "

On a petition for a rehearing en banc, Mr. Chief Justice Beatty rendered an opinion stating the basis for the doctrine in a paragraph which has been cited many times since. "The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. *His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon; to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing; and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. As to common dangers, existing in the order of nature, it is the duty of parents to guard and warn their children, and, failing to do so, they should not expect to hold others responsible for their own want of care.* But, with respect to dangers specially created by the act of the owner, *novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber-pile cases, and others of a similar character.*" (Italics added.)

Some of the later cases applying the doctrine have amplified this statement of the rule. A very interesting case is the "swing case". Solomon v. Red River Lumber Co., 1922, 56 Cal.App. 742, 206 P. 498, 501. The opinion in that case, written by Mr. Justice Burnett, contains a very elaborate discussion of prior cases, and summarizes the philosophy behind them in this manner: "In considering the philosophy of the rule in those cases, it is said in some of the decisions that the owner or the one in charge of the dangerous contrivance ought reasonably to anticipate that an injury to children would occur, if the machine is not properly guarded, and therefore he must be held to have anticipated it and to be guilty of negligence if

it does cause injury. The reason for the rule, and therefore the rule itself, must fail herein because *the swing was not naturally dangerous to children but a safe and common apparatus with which children habitually play without injury. Hence, injury from its use in the ordinary way would not be likely to occur, and no one is under obligation to anticipate what is unlikely to happen. In this connection it will not be disputed that one who furnishes or maintains such an instrumentality is bound to anticipate and provide against only the natural and probable consequences that may result therefrom."* (Italics added.)

The seeming departure from this doctrine in cases like Clark v. Pacific Gas & Electric Co., 1931, 118 Cal.App. 344, 5 P. 2d 58, 6 P.2d 297, is due to the fact that an instrumentality was maintained which raised a question as to whether it was the *usual* or *unusual* thing. That was a telephone pole case. The courts had held in a previous case, where a boy, by what boys call "shinnying", had climbed a telephone pole, and there had come in contact with a wire, there was no liability. A later case arose where the telephone company had driven spikes into the pole, beginning close enough to the ground to enable a boy, by climbing up to the first one, to reach the wires easily. And the court said that this presented a question of fact for the jury, whether the instrumentality was or was not an attractive nuisance.

Now, here we have an ordinary means of conveyance from floor to floor, which has been in common use for many years, and which was constructed, not as an uncommon and dangerous instrumentality, but as a safe instrumentality for ordinary use. It is based upon the principle of rotating a series of steps. A person, by standing on a step, is carried upward or downward, depending upon the direction in which a revolving belt carries the apparatus. There is no showing of any defective construction; there is no testimony that the equipment differed, in any way, from the standard equipment used for the purpose.

We find a child of immature years, going to the store with his mother. She reaches her destination on the upper floor by means of an escalator and is talking to a salesman about the exchange of a suit. The child wanders away from her, she hears a scream, and finds that the child has stuck his hand into an aperture on the end of one of the escalators on that floor.

The instrumentality has none of the characteristics which might turn it into an attractive nuisance. It is not artificial, uncommon or dangerous. Hernandez v. Santiago Orange Growers Ass'n, 1930, 110 Cal.App. 229, 293 P. 875; Polk v. Laurel Hill Cemetery Ass'n, 1918, 37 Cal.App. 624, 174 P. 414; Beeson v. City of Los Angeles, 1931, 115 Cal.App. 122, 300 P. 993; Solomon v. Red River Lbr. Co., supra. It is an ordinary, common instrumentality, built and constructed for ordinary and common use. The doctrine does not apply under such conditions. Allred v. Pioneer Truck Co., 1918, 179 Cal. 315, 176 P. 455; Doyle v. Pacific Electric Ry. Co., 1936, 6 Cal.2d 550, 59 P.2d 93. The California rule is also the general rule: See, 45 Cor.Jur. 763, 773. Empire District Electric Co. v. Harris, 1936, 8 Cir., 82 F.2d 48.

It has not been shown that the escalator could have been constructed in such a manner that even the small fingers of a tiny boy, four years old, could not be stuck into the openings in the floor plate. It is not known that the plate could have been made solid without impairing the operation of the escalator.

We are asked to follow the Missouri case which declares an escalator to be an inherently dangerous instrumentality, attractive to children. I do not think I can do so under the California decisions on attractive nuisances. Liability for injury should arise only from failure to anticipate something which is likely to happen. It should not arise, as Mr. Justice Burnett said in the case of Solomon v. Red River Lumber Co., supra, from failure to anticipate "what is unlikely to happen".

Under the circumstances, I feel that the plaintiffs have failed to meet the burden of proving some negligent act upon which liability could be grounded. The doctrine of attractive nuisance is, to some extent, a doctrine of vicarious liability. It makes one liable for failure to anticipate what children, not bound by the rule of ordinary care, are likely to do. It is a concession to the irresponsibility of childhood. But it should not be extended to apply to a situation where an ordinary instrumentality intended for a certain purpose, is used by a child in a manner entirely foreign to it. In United Zinc Co.

v. Britt, supra, Mr. Justice Holmes observed sagely [258 U.S. 268, 42 S.Ct. 300]: "A road is not an invitation to leave it elsewhere than at its end". So here, we may sum up the case against liability by saying: "An escalator is an invitation to ride; not an invitation to play with or on it."

■ Therefore, the plaintiffs have failed to establish a claim under the first cause of action. Nor can they recover under the second cause of action. There is no showing of any negligent act on the part of the employee Goddord, the floor manager, who, on finding that the child's hand had been caught, tried first to extricate it, then stopped the escalator, and still failing to extricate the hand, reversed the escalator's movement. The fact that blood appeared after he reversed the escalator is no indication that the actual injury occurred at that time. As the child's fingers were thrust downward, it is likely that the injury occurred while the hand was in that position, before the escalator was reversed, and that it was only after the hand was thrust upward by the reverse movement, that the blood spurted, so that it could be seen.

■ In any event, Goddord and his employers are entitled to the benefit of the rule that no one is guilty of negligence who, in an emergency, does whatever he thinks is necessary, even if he does a foolish thing.

■ There is no showing here that what he did was foolish. If one is confronted with a sudden situation, and does the best he can under the circumstances, he should not be charged with negligence, because it may appear that had he had more time to think he might have acted differently. See: Mortensen v. Fairbanks, 1934, 1 Cal.2d 489, 35 P.2d 1030; Casson v. Atchison etc. Ry. Co., 1931, 119 Cal.App. 222, 6 P. 2d 336; Betzold v. Rossi Floral Co., 1933, 133 Cal.App. 236, 23 P.2d 839.

There is no showing that Goddord left anything undone. He rushed quickly to secure the keys. He acted. And there is no showing that there was anybody in the employ of the company, or any mechanic, who would have done otherwise than he did.

■■ So, if there be no negligence in the construction or maintenance of the equipment, there is none in the manner in which Goddord extricated the child's hand, even if we assume that the injury occurred during the process. After all, he is liable for only ordinary care, and there is no showing that he did not use such care. See: Scott v. San Bernardino Valley Traction Co., 1918, 152 Cal. 604, 93 P. 677. There can be no negligence in the absence of a violation of a duty owed to somebody, whether he be an invitee, or occupies a different relationship to the person. Casson v. Atchison etc. Ry., supra.

The third cause of action, of course, is merely for special damages by reason of the expenditures incurred, and must fall with the others.

I dislike to see a child in babyhood maimed in one hand,—an injury which may affect his entire life. But, regardless of what my sympathies may be, there must be a legal foundation for liability. I always bear in mind the injunction of a great judge, Mr. Justice Cardozo, that a judge is not "a knight errant roaming at will, in pursuit of his own ideal of beauty or of goodness". (Cardozo, The Nature of the Judicial Process, 140) He is powerless to establish legal liability where the law says that none exists.

I am satisfied that, under the circumstances shown to exist here, the plaintiffs cannot recover. And that if a verdict were rendered in their favor, I would be in duty bound to set it side as not supported by the evidence or the law.

■ The motion to dismiss, which, under the new rules, takes the place of a motion for a non-suit (Federal Rules of Civil Procedure, rule 41(b), 28 U.S.C.A. following section 723c), will, therefore, be granted.