[Civ. No. 4027.   Fourth Dist.   Apr. 13, 1950.]

MARVIN L. SHOOK, Respondent, v. R. F. BEALS et al., Appellants; HERMAN TARVIN, Cross-complainant.

Bradley & Bradley and McFadzean, Crowe & Mitchell for Appellants.

David S. Folsom for Respondent.

GRIFFIN, J.—Plaintiff, as the owner and lessor of a chartered airplane, brought this action against five named defendants for damages for the wrecking and loss of his airplane by virtue of the claimed negligence of defendant Beals, the pilot.

Defendants answered the complaint, denied generally the allegations thereof and alleged negligence on the part of the plaintiff in furnishing Beals an airplane with faulty brakes. Defendant Tarvin, who was injured in the accident, filed a cross-complaint against plaintiff seeking damages by reason of the claimed negligence of plaintiff. The jury found against cross-complainant and returned a verdict in favor of plaintiff against all defendants for $9,000.

There is very little conflict as to the facts presented concerning the questions raised on this appeal. All defendants lived in Tulare County. They were fishing enthusiasts. A friend of defendant LeRoy Martell asked him to come to Garberville, California, to fish. This fact was disclosed to defendant Beals, and he said he would be able to obtain a plane. He inquired as to the number who would be going and Martell told him he thought it would be four. Beals called defendants Carl Swearingen and Tarvin and asked them to go. Beals and Mar-

tell saw defendant Phillip Swearingen and each was told of the arrangements and the cost.

Beals testified that Martell and the others had been talking about such a trip for over a year; that he and Martell decided the time was opportune to obtain an airplane and go; that they all "got together," "talked it up," and "made the arrangements, the plans"; that he made negotiations with plaintiff regarding the rental of the plane; that the other named defendants agreed to pay for the cost of the rental, which came to $100; that each defendant, except himself, paid $25. The total amount was paid by checks made payable directly to plaintiff. Beals stated that he told plaintiff that there would be four passengers besides himself. Some argument ensued about carrying five passengers in a four-place Stinson plane, which was only licensed to carry four passengers. Beals assured him that only four would eventually go. Plaintiff was told by Beals of the plans and that they intended landing at Garberville airport. Plaintiff instructed Beals not to land there because of the limited length of the landing field. On the following day Beals, in the absence of the other defendants, took the plane to another airport, loaded the other defendants in, and departed. The plane was only equipped with three passenger safety belts. Three of defendants were seated in the rear seat and some plan was devised to increase the size of one of the two safety belts to accommodate three persons. One defendant testified that before leaving the airport "Beals told us we could not go to this airport (Garberville) and we thought we would go somewhere in the vicinity and find that out later." The party first landed at Stockton to obtain some film ordered by one of the defendants. They next stopped at Mendocino airport for directions and to inquire about the landing field at Garberville. All being present, they were told that the landing there was unsafe with that size plane. The evidence is conflicting as to whether they were told that they should not land at Fort Bragg. Anyway, they attempted to land there. As the plane came in for such a landing the wheels first struck the ground, arose, and according to defendant Beals' testimony, on the second landing the brakes seemed to freeze. The plane nosed over and upset. All were able to leave the wrecked plane uninjured except one. The wreckage was salvaged and sold for $300. Beals was the only defendant who was licensed and knew how to fly the plane. On his return, in making up a log of his flying

hours, he related that he had only three passengers besides himself.

Plaintiff testified that Beals called and wanted to rent a plane; that he stated he had some passengers who wanted to go fishing near Garberville; that he warned him not to stop at that or any other short landing field; that brake fluid had been leaking on one of the tires and that he instructed Beals how to land and told him to pump his brake pedal to obtain more fluid when stopping. Apparently the fluid in the brakes was checked by Beals and an attendant before leaving. Plaintiff produced evidence that the plane was in good working order before it was rented on this occasion. Plaintiff then testified that he had no personal dealings with the defendants other than Beals about "this particular airplane for which Mr. Beals was their agent, you might say." Beals had flown planes for plaintiff on other occasions.

The amended complaint charges that the named *defendants* hired and received of plaintiff the airplane, and that they did not take ordinary care of it and used it in a careless and negligent manner so that it was wrecked, and failed and refused to return it to plaintiff, to his damage in the sum claimed.

Defendants now argue that under the pleadings plaintiff was barred from showing joint venture or joint enterprise of the defendants or a joint bailment; that it was necessary to allege that Beals operated or flew the airplane as agent, servant or employee of his codefendants and that defendants were engaged in the joint venture and that each had the right to exercise control over said defendant Beals in renting and in the flying of said airplane before any evidence on that subject was admissible; that since no such issue was raised by the pleadings, instructions on the doctrine of imputed negligence should not have been given and that since the pleadings did not raise these issues there was no basis on which a judgment against the defendants, other than that of defendant Beals, could rest, citing such cases as *Campagna* v. *Market Street Ry. Co.*, 24 Cal.2d 304 [149 P.2d 281]; and *Shain* v. *Belvin*, 79 Cal. 262 [21 P. 747].

In *Hansen* v. *Burford*, 212 Cal. 100 [297 P. 908], plaintiff brought an action in assumpsit against certain named defendants to recover the price of lumber alleged to have been sold to them. The court gave judgment against all defendants based on the finding that all of them were engaged in the joint venture and that such lumber was sold to them as such joint venturers.

Defendants endeavor to distinguish this case from the instant one in that the cited case is one in assumpsit and the present case is one in tort. We perceive no distinction in pleading a cause of action in this respect. In the absence of special demurrer, if defendants are liable under the pleadings, the nature of their liability becomes a factual question and if not established by the evidence plaintiff cannot recover. As between plaintiff and cross-complainant Tarvin, this issue was raised by their pleadings. Plaintiff claimed contributory negligence on the part of Tarvin in that he and Beals were at the time engaged in a joint venture or common enterprise. ■ In this case all the parties proceeded to trial, without objections, upon the theory of joint venture or that Beals was the agent for all the defendants and the court instructed the jury on the subject.

It is well settled that the theory upon which a case is tried in the court below must be adhered to on appeal. (*Hayward Lumber & Inv. Co.* v. *Ford,* 64 Cal.App.2d 346, 354 [148 P.2d 689] ; *Merrill* v. *Kohlberg,* 29 Cal.App. 382, 386 [155 P. 824].) The general rule is stated in 2 Cal.Jur. 242, section 71 to be:

''Where the trial proceeds in all respects as though the complaint sufficiently states a cause of action, and the defendant goes to trial upon the theory that there is a material issue, and allows evidence to be received upon such issue without objection in any way, and the court makes a finding upon such evidence, upon the theory that the proper issue is made by the pleadings, with no objection from either party, the parties will not, nor will either of them, be allowed on appeal to say, for the first time, there was no such issue. This is especially true where there is not a total absence of allegations essential to a statement of a cause of action.'' (Citing cases.)

Where a case is tried upon the theory that certain issues are presented by the pleadings, and evidence is received thereon without objection, the parties may not thereafter question the sufficiency of the pleadings. (21 Cal.Jur. 260, § 181.) Since it does not appear that proper objections were taken in the trial court and the complaint does state a cause of action, the pleadings cannot now be questioned on appeal.

The next question is whether or not the evidence sufficiently establishes a joint venture or joint enterprise within the meaning of that term. The term ''joint enterprise'' is often used interchangeably with ''joint adventure'' and has been defined as a single ''joint venture'' in which the parties thereto are

associated together for the joint benefit of all. Some authorities, however, distinguish between the terms "joint adventure" and "joint enterprise," holding that the former applies to associations for mutual profits, whereas the latter applies to undertakings for the mutual benefit or pleasure of the parties. (*Greer* v. *McCrory*, —— Mo.App. —— [192 S.W.2d 431, 439] ; *Pence* v. *Berry*, 13 Wn.2d 564 [125 P.2d 645] ; 48 C.J.S. 1, p. 803.)

*Clark* v. *Janss*, 39 Cal.App.2d 523 [103 P.2d 175], fully considered several cases bearing on this point and stated the rule to be that in order to constitute a joint enterprise in such a case as this it is not sufficient that the parties in question have a common purpose and a common destination but the one to whom negligence is sought to be imputed must have exercised control over, or have had the legal right to control, the actions of the other in the driving of the car. (Citing cases.) This court there held that the facts established did not *as a matter of law*, show a joint venture where the mother loaned her car to her two daughters to take a pleasure trip. In the instant case the question was submitted to the jury and apparently it found that there was a joint venture. Our question is whether there is sufficient evidence to support the finding. It is defendant's argument that although the defendants may have had a common destination and each shared in the expense of the trip, the only common purpose of the defendants was to go fishing, and that the facts established do not prove agency or joint venture so as to allow imputation of actionable negligence on the part of defendant Beals to his codefendants; that because such defendants neither controlled, sought to control, nor had the right to control him in renting the plane or in his operation of it, and since none of them were, in fact, licensed or qualified to pilot the plane, they could not be held to have an equal right to govern its movements, citing such cases as *Pope* v. *Halpern*, 193 Cal. 168 [223 P. 470] ; *Williamson* v. *Fitzgerald*, 116 Cal.App. 19 [2 P.2d 201] ; *Walker* v. *Adamson*, 9 Cal.2d 287 [70 P.2d 914] ; *Morrison* v. *Jose*, 57 Cal.App.2d 795 [135 P.2d 586] ; and *Edwards* v. *Freeman*, 34 Cal.2d 589 [212 P.2d 883].

All of the cases cited involved the use of an automobile rather than an airplane. In principle we see no distinction. With but one or two exceptions, the automobile was owned by one of the claimed joint venturers. In those cases it was held that there must be a showing that the other joint venturer riding as a passenger had some control or legal right of control

over the car at the time, before negligence could be thus imputed to the passenger. However, in *Lloyd* v. *Mowery,* 158 Wash. 341 [290 P. 710], it was held that the occupants of an automobile (owned by one of the parties) overturning while they were on a hunting trip, were engaged in a joint venture, where they jointly contributed to the expenses. Whether such a holding was applicable in this state was questioned in *McCann* v. *Hoffman,* 9 Cal.2d 279, 284 [70 P.2d 909], and it was there stated that the great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who, without such exchange, would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. That case involved a car owned by one, in which a so-called guest was riding, and the guest law was under construction.

A different rule seems to be applicable where the claimed joint venturers themselves, or through their authorized agent, jointly hired, owned or leased an automobile or airplane, which joint ownership or joint hiring, as a matter of law, gives each such joint venturer control or the right of control over the automobile or airplane. This distinction is noted in Restatement of the Law of Torts, page 1277, section 491, where it is stated that the fact that a driver and another riding with him are joint possessors of a car, either arising from a joint hiring or joint ownership, such fact is some evidence of a joint enterprise, and then states (subd. *g*) :

"The fact that two or more persons, *who do not jointly hire or own the car,* agree that each shall pay a substantial share of the expenses of a particular trip does not of itself make the trip a joint enterprise. When, however, there are one or more of the following additional factors the determination whether there is a joint enterprise is a question for the jury subject to the power of the court to see to it that the jury reaches a reasonable conclusion. These factors are: (1) a common destination; (2) a power to determine or change the route from time to time by mutual agreement; and (3) the fact that the trip is for a common but *non*business purpose." (Italics ours.)

In the annotations thereto, page 265, many California cases are cited holding that to have a joint venture there must be

" 'a community of interest in objects and equal right to direct and govern movements and conduct of each other with respect thereto. Each must have voice and right to be heard in its control and management' . . ." And that "There can be no joint venture in the absence of an agency relationship."

In *Hupfeld* v. *Wadley*, 89 Cal.App.2d 171 [200 P.2d 564], it was held that where the joint adventure had been established and where the parties were still engaged within the scope of the joint enterprise or undertaking, all members thereof may be jointly liable for injuries resulting from the negligent conduct of one of the parties thereto, and the negligence of one joint venturer is imputable to his associates. (See, also, *Di Vita* v. *Martinelli*, 123 Cal.App. 392, 394 [11 P.2d 423]; 48 C.J.S. 870, § 14-e.)

In the instant case there was evidence that the five defendants, including Beals, agreed that they would all hire or rent a plane for the common purpose of going to a particular place to fish and that Beals could and was authorized to act for them in making all necessary arrangements for this purpose; that the rental price of the plane was fixed at $100, and four of the defendants shared equally in the payment thereof with checks made payable directly to plaintiff. The jury was justified in believing these facts. Plaintiff therefore established a community of interest in the airplane by virtue of the joint hiring thereof for the term specified. Each, legally, had the right of control over the plane and the driver, if he were their agent in operating the plane for them. It was not necessary to establish the fact that some one or all of the defendants, excluding Beals, personally knew how to pilot the plane themselves.

In *Rogers* v. *Goodrich*, 131 Cal.App. 245, 249 [21 P.2d 122], it is said that "the passenger must exercise some control over the driver, or in law, may be said to possess the right of such control, before it will be held that they are engaged in a joint enterprise." There is sufficient evidence to show that defendants did, in law, have the right of control, and there is some evidence that one or more of the parties did, in fact, exercise some control over the pilot. At their direction he was told to land at Stockton to secure films for a camera. At Mendocino all the parties landed and all engaged in obtaining information as to landing conditions at other airports. The testimony shows that they all made the decision to land at Fort Bragg, notwithstanding a warning that the field was too short for a land-

ing by a plane of that size. It cannot be said, as a matter of law, that there was not sufficient evidence to support the jury's conclusion that the defendants were, at the time, engaged in a joint adventure or enterprise within the meaning of that term and that defendants, other than Beals, had legally no right of control over the pilot or the airplane.

██ Defendants next complain of instructions given on the subject. After informing the jury of the various claims presented, the court instructed it that the burden was "upon each party to establish by a preponderance of the evidence that the other or others were negligent and that such negligence was a proximate cause of the accident in question," and then said:

"The issues to be determined are these: First, was the plaintiff negligent; Second, were any of the defendants negligent; Third, was the negligence of any of the defendants imputed to the other defendants by reason of their being joint venturers. . . . If you find none of them were negligent then neither the plaintiff or the cross-complainant . . . may recover. If you find that although one or more of them was negligent, the accident was not the proximate result of such negligence then again none of them may recover . . . If you find that the plaintiff was free from negligence, or if negligent that his negligence did not contribute in any degree as a proximate cause of the injury and if you find that the defendants were negligent or that one of them was negligent and his negligence was imputed to the others and that this negligence was a proximate cause of the accident then the plaintiff is entitled to recover from the defendants, or such of them as were negligent, either in fact or by reason of the doctrine of imputed negligence . . ."

Then followed an instruction as to joint venture, i.e.:

"If the defendants were engaged in a joint venture, the relationship between them, insofar as it involved the immediate management of the airplane, must have been similar to that of a partnership—that is to say, involving by mutual understanding some common objective, some joint enterprise in which they then were engaged, with each authorized to act and acting in pursuit of that common purpose, so that each was acting for the others and for each." And that

"If . . . you should find that the defendants were joint venturers, then, all of them are equally liable for the acts and negligence of each one of them. However, if they were not

joint venturers then each of them is liable only for his own acts and negligence.''

Defendants charge that the instruction, as given, made no reference to the requirement that defendants must be found to be in *joint or common possession and control* of the plane, with each having an equal right to be heard in its control and management.

It is true that the definition of a joint venture, as given, did not elucidate to the extent suggested by counsel for defendants. However, the relationship was described as ''similar to that of a partnership'' with a mutual understanding of some common objective and where *each* was *authorized* to act *for the others*. A partnership connotes a community of interest in the property. (*Fee* v. *McPhee Co.*, 31 Cal.App. 295, 315 [160 P. 397] ; *Doan* v. *Dyer*, 286 F. 339 ; 20 Cal.Jur. 689, § 9.)

In the absence of an explanatory instruction on the subject being proffered or requested by defendants, they cannot now be heard to complain, where the evidence supports the theory that each had, legally, an equal voice in the management of the agency, and, in law, possessed the right of such control. Evidence of these elements was lacking in *Wessling* v. *Southern Pacific Co.*, 116 Cal.App. 455 [3 P.2d 25], relied upon by defendants.

The general rule is that where a general instruction is given which is correct as far as it goes, being deficient merely by reason of its generality, the injured party may complain on appeal only in case he requests that the charge be made more specific or asks for other qualified instructions, and his request is denied. (*Peckham* v. *Warner Bros. Pictures*, 42 Cal.App.2d 187, 189 [108 P.2d 699] ; *Eubanks* v. *Milton G. Cooper & Son, Inc.*, 68 Cal.App.2d 366 [156 P.2d 775] ; 24 Cal.Jur. 796, § 74.)

General complaint is made about other instructions given and particularly to one reading :

''If you find that the defendants or any or all of them rented the airplane from the plaintiff then he or they were a bailee or bailees of the airplane and were under a duty to the plaintiff to use ordinary care to preserve the airplane and are liable to the plaintiff for any damage to the airplane as a result of their negligence.''

It is argued that this instruction is confusing and does not contain all the necessary elements, i.e., that any such negligence on their part would have to be a proximate cause of the accident and the plaintiff would have to be free of any contributory negligence, citing *Spear* v. *Leuenberger*, 44 Cal.App.2d

236 [112 P.2d 43]; and *La Rue* v. *Powell,* 5 Cal.App.2d 439 [42 P.2d 1063]. While this instruction, standing alone, lacked the qualifications mentioned, the trial court did give a general instruction that the burden was on plaintiff to prove negligence on the part of defendants by a preponderance of the evidence; that such negligence was a proximate cause of the accident in question; and that it must be established that plaintiff was free from negligence before a recovery could be had.

Section 1925 of the Civil Code defines a hiring, and section 1928 thereof requires a hirer of a thing to use ordinary care for its preservation. The question whether a bailee is guilty of negligence is one for the jury. (*Southern Pacific Co.* v. *Von Schmidt Dredge Co.,* 118 Cal. 368 [50 P. 650]; 4 Cal.Jur. 23, § 13.)

In *Baugh* v. *Rogers,* 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043], it was held that when the owner of an automobile gives another person possession of it with permission to operate it, a contract of bailment is created; and that a bailee is responsible in damages to the bailor for any injury to the bailed property resulting from a failure of the bailee to exercise a proper degree of care in protecting it.

In *O'Brien* v. *Woldson* 149 Wash. 192 [270 P. 304, 306, 62 A.L.R. 436], it was said:

"A bailment for hire is for the mutual benefit of the parties. A joint enterprise is an undertaking for the mutual benefit or pleasure of the parties. The same rule should be applied in the one case as in the other."

It has often been stated that a trial court is not required to state all the law applicable to a case in a single instruction. The charge must be read as a whole, that is to say, instructions given should be considered in connection with each other, and if, without straining any portion of the language, the charge harmonizes as a whole and fairly and accurately states the law, a reversal may not be had because of verbal inaccuracies, or because a separate instruction does not contain all of the conditions and limitations which are to be gathered from the entire charge. (24 Cal.Jur. 861, § 114; *Lonnergan* v. *Stansbury,* 164 Cal. 488 [129 P. 770].) Construed as a whole, the instructions were not prejudicially erroneous. (24 Cal.Jur. 857, § 113.)

The final claim of error is that there is no sufficient evidence to support the damages allowed. Plaintiff, as owner of the airplane, testified that its value before it was wrecked

"I think was $10,000." Another witness testified that in his opinion such an airplane, in good condition, would be worth from $6,000 to $10,000, and if in excellent condition "easily be worth $10,000." There was evidence that the plane was in good condition prior to the accident. A defense witness placed the value at approximately $3,500. The proper measure of damages is the reasonable market value of the personal property destroyed. (*Tatone* v. *Chin Bing*, 12 Cal.App.2d 543 [55 P.2d 933].) ▇ It is a recognized rule that the owner of property, whether generally familiar with such values or not, is competent to estimate its worth, the lack of knowledge going to the weight rather than the admissibility of the testimony. (*Hood* v. *Bekins Van & Storage Co.*, 178 Cal. 150 [172 P. 594]; *Willard* v. *Valley Gas & Fuel Co.*, 171 Cal. 9 [151 P. 286]; *Schraeder* v. *Robinson*, 78 Cal.App.2d 328 [177 P.2d 788].) The evidence merely created a conflict as to the value of the airplane. We are bound by the familiar rule. (*Chichester* v. *Seymour*, 28 Cal.App.2d 696 [83 P.2d 301].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied May 2, 1950, and appellants' petition for a hearing by the Supreme Court was denied June 8, 1950.